09-1074-cr
United States v. Bari

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term 2009

(Argued: February 23, 2010                                        Decided: March 22, 2010)

Docket No. 09-1074-cr

UNITED STATES OF AMERICA,

   *Appellee*,

   v.

ANTHONY BARI,

   *Defendant-Appellant.*

Before: CABRANES and PARKER, *Circuit Judges*, and UNDERHILL, *District Judge.*[*]

   We consider whether the District Court for the Southern District of New York (Denny Chin, *Judge*) erred in considering during a supervised release revocation hearing information confirmed by its own Internet search. Defendant Anthony Bari ("Bari") appeals from the District Court's March 11, 2009 judgment revoking Bari's term of supervised release, imposed after an earlier conviction for bank robbery and, after revocation, sentencing him principally to a term of thirty-six months' imprisonment. During the supervised release revocation hearing, Judge Chin noted that his chambers "did a Google search" to confirm that "there are also lots of different rain hats . . . that one could buy." On appeal, Bari argues that this independent Internet search violated Rule 605 of the Federal Rules of Evidence. We now consider (1) to what extent the Federal Rules of Evidence

---

[*] The Honorable Stefan R. Underhill, of the United States District Court for the District of Connecticut, sitting by designation.

apply in supervised release revocation hearings, and (2) whether the use of an Internet search to confirm a judge's intuition about a fact not subject to reasonable dispute is grounds for reversal. We conclude that the Federal Rules of Evidence do not apply with their full force in supervised release revocation hearings. We also conclude that the District Court did not commit reversible error in conducting an Internet search to confirm his intuition regarding a matter of common knowledge.

Affirmed.

DAVID S. HAMMER, New York, NY,
*for Defendant-Appellant.*

PETER M. SKINNER, Assistant United States Attorney (Preet Bharara, United States Attorney, *on the brief*, and Andrew L. Fish, Assistant United States Attorney, *of counsel*) United States Attorney for the District of Connecticut, *for Appellee.*

PER CURIAM:

We consider whether the District Court for the Southern District of New York (Denny Chin, *Judge*) erred in considering during a supervised release revocation hearing information confirmed by its own Internet search. Defendant Anthony Bari appeals from the District Court's March 11, 2009 judgment revoking Bari's term of supervised release, imposed after an earlier conviction for bank robbery, and sentencing him principally to a term of thirty-six months' imprisonment. During the supervised release revocation hearing, Judge Chin noted that his chambers "did a Google search" to confirm that "there are also lots of different rain hats . . . that one could buy." A. 89a. On appeal, Bari argues that this independent Internet search violated Rule 605 of the Federal Rules of Evidence ("Rule 605"). We therefore consider (1) the extent to which the Federal Rules of Evidence (the "Rules") apply in supervised release revocation hearings, and (2) whether the use of an Internet search to confirm the judge's intuition about a fact not subject to

2

reasonable dispute is grounds for reversal.

## BACKGROUND

Unless stated otherwise, the following facts are not in dispute.

Bari pleaded guilty to, and was convicted of, one count of bank robbery. In a judgment entered on October 18, 1995, he was sentenced principally to 188 months' imprisonment to be followed by five years' supervised release. In May 2008, Bari was released from custody and began serving his term of supervised release.

On October 24, 2008, the United States Probation Office submitted to the District Court an Amended Request for Court Action alleging that Bari had violated the terms of his supervised release. The Amended Request alleged several violations of the terms of Bari's supervised release, including that on September 9, 2008 Bari had committed bank robbery in violation of 18 U.S.C. § 2113 (a).[1]

On November 18 and 19, 2008, the District Court held a hearing on the charged violations. At the conclusion of the hearing, the District Court found Bari not guilty of some of the violations alleged, but guilty of the bank robbery violation and a firearms violation. With respect to the bank robbery violation, the District Court based its finding that Bari had indeed violated the terms of his supervised release on the cumulative effect of multiple items of evidence. Specifically, Judge Chin

---

[1] This statute provides, in relevant part, as follows:

> Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association . . . Shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 2113(a).

3

observed that a bank employee's identification of Bari's voice was "worth something," A. 91, because Bari "speaks in a loud, aggressive manner," and "that his voice is recognizable." A. 92. He also noted that numerous witnesses estimated the robber's height and weight, which were similar to Bari's height and weight. Moreover, the height, weight, and posture captured on the video footage taken by the security cameras matched Bari's height, weight, and posture. A. 92-93. Judge Chin was also persuaded by similarities between Bari's car and a car that drove by the bank shortly after the robbery. A. 94. Additionally, he considered the evidence of "Mr. Bari's suspicious conduct at the bank or in the vicinity of the bank" in the days before and after the robbery. A. 96. He also found "troubling" the evidence that a stolen license plate was found in Bari's car. A. 98. In addition, he concluded that there was evidence to show that Bari was in the area of the bank on the day of the robbery. A. 98.

Most relevant to this appeal, Judge Chin considered evidence that the bank's surveillance footage showed that the robber wore a yellow rain hat and that a yellow rain hat was found in the garage of Bari's landlord. He stated as follows:

> In addition, and I think this is the strongest piece of evidence frankly, we have the yellow hat. I am convinced from looking at the surveillance video [from the bank] of September 9 that [the hat found in the garage] is the same type of hat as appears in the video. It may not be precisely the actual hat, but it is the same type of hat. It is just too much of a coincidence that the bank robber would be wearing the same hat that we find in [his landlord's] garage.

A. 93. Judge Chin then noted several similarities between the hat found in the landlord's garage and the hat worn by the robber. To emphasize the similarity between the hats, he stated that "there are clearly lots of yellow hats out there," and that "[o]ne can Google yellow rain hats and find lots of different yellow rain hats." *Id.* Earlier in the proceeding, he had also stated that "[w]e did a Google search, and you can find yellow hats, yellow rain hats like this. But there are also lots of different rain hats, many different kinds of rain hats that one could buy." A. 89a.

4

Taking all of the evidence together, he concluded that there were "too many coincidences," and, accordingly, found "by a preponderance of the evidence and plus some" that the government had met its burden to establish that Bari had violated the terms of his supervised release by robbing a bank. A. 99.

On February 27, 2009, the District Court reversed its ruling with respect to the firearms violation and sentenced Bari to a term of 36 months' imprisonment, to be followed by two years' supervised release, in connection with the bank robbery violation.

Bari now appeals.

## DISCUSSION

On appeal, Bari argues that the District Court violated Rule 605[2] by conducting its own Internet search and relying on the results of that search in making its decision to revoke Bari's supervised release. The government argues that the Federal Rules of Evidence do not apply to supervised release revocation proceedings. Alternatively, the government argues that if the Federal Rules of Evidence apply to this proceeding, the District Court took proper judicial notice of a fact not subject to reasonable dispute, as allowed by Rule 201 of the Federal Rules of Evidence.

We consider first to what extent the Federal Rules of Evidence apply in supervised release revocation proceedings. We then consider whether the use of an Internet search to confirm the judge's intuition about a fact not subject to reasonable dispute is grounds for reversal.

**A.      Federal Rules of Evidence in Supervised Release Revocation Proceedings**

The government argues that the Federal Rules of Evidence are not applicable in supervised release revocation hearings. Because this is a question of law, we review it *de novo*. *See, e.g., In re*

---

[2] Rule 605 states that "[t]he judge presiding at the trial may not testify in that trial as a witness. No objection need be made in order to preserve the point." Fed. R. Evid. 605.

5

*N.Y. Times Co. to Unseal Wiretap & Search Warrant Materials*, 577 F.3d 401, 405 (2d Cir. 2009). As a general matter, we agree with the government that the Federal Rules of Evidence, except those governing privileges, do not apply in supervised release revocation proceedings. It is well settled that the Federal Rules of Evidence do not apply in full in probation revocation proceedings. *See, e.g.*, *United States v. Aspinall*, 389 F.3d 332, 344 (2d Cir. 2004) (concluding that the Federal Rules of Evidence, except those governing privileges, do not apply at probation revocation proceedings); *see also United States v. Carlton*, 442 F.3d 802, 809 (2d Cir. 2006) ("The full panoply of procedural safeguards does not attach to revocation proceedings," because a "probationer *already stands convicted of a crime*." (internal quotations omitted)). Moreover, the Rules expressly state that they are inapplicable in proceedings "granting or revoking probation." Fed. R. Evid. 1101(d)(3). We have also previously established that "the constitutional guarantees governing revocation of supervised release are identical to those applicable to revocation of parole or probation." *United States v. Jones*, 299 F.3d 103, 109 (2d Cir. 2002). Accordingly, we have no difficulty concluding that the Federal Rules of Evidence do not apply in full at supervised release revocation hearings.[3]

Although we conclude that the Federal Rules of Evidence do not apply with their normal force in supervised release revocation hearings, the Rules nevertheless provide some useful guidelines to ensure that any findings made by a district court at such hearings are based on "verified facts" and "accurate knowledge." *See generally Morrissey v. Brewer*, 408 U.S. 471, 489 (1972) (discussing the "flexible" evidentiary guidelines in parole revocation proceedings before state parole boards). As we observed in *Aspinall*, "in revocation proceedings the normal evidentiary constrictions should be

---

[3] We note that several of our sister Circuits have also concluded that the Federal Rules of Evidence do not apply at supervised release revocation hearings. *See, e.g.*, *United States v. Lloyd*, 566 F.3d 341, 343 (3d Cir. 2009); *United States v. Black Bear*, 542 F.3d 249, 255 (8th Cir. 2008); *United States v. Verduzco*, 330 F.3d 1182, 1185 (9th Cir. 2003); *United States v. Armstrong*, 187 F.3d 392, 394 (4th Cir. 1999).

*relaxed*." 389 F.3d at 344 (emphasis added). We emphasize that the evidentiary constraints in such proceedings should be loosened, although not altogether absent. Furthermore, in relaxing those constraints, we consider "verified facts" and "accurate knowledge" to be the touchstones of our inquiry. *See Morrissey*, 408 U.S. at 489. Put differently, district courts need not comply with the Federal Rules of Evidence during supervised release revocation proceedings, so long as their findings are based on "verified facts" and "accurate knowledge."

**B.      Independent Internet Searches and Judicial Notice**

Applying relaxed evidentiary constraints to the instant case, we now consider whether the District Court committed reversible error when it conducted an independent Internet search to confirm its intuition that there are many types of yellow rain hats for sale. Bari argues that the District Court's search violates Rule 605 of the Federal Rules of Evidence; the government argues that the search is permissible under Rule 201 of the Federal Rules of Evidence. We agree with the government that Rule 201—in some relaxed form—governs this inquiry.[4] Because Bari did not object to the District Court's statement that "there are lots of different rain hats . . . that one could

---

[4] First, a few words on the relationship between Rules 605 and 201. Rule 605 prohibits the judge presiding at the trial from testifying in that trial as a witness. Rule 201 permits a judge to take judicial notice of certain types of facts. Logically, then, if a fact is of a kind that a judge may properly take judicial notice of it, then he is not improperly "testifying" at trial by noting that fact. Any other conclusion would lead to Rule 605 effectively subsuming Rule 201. If, after all, a judge was improperly testifying at trial each time he took judicial notice of a fact, it would be effectively impermissible to take judicial notice of any fact. Accordingly, we must first consider whether the judge was taking permissible judicial notice of a fact, pursuant to Rule 201. If he could not have taken judicial notice of that fact within the bounds of Rule 201—because, for example, it was not a "matter[ ] of common knowledge"—then we consider whether the judge violated Rule 605. Here, we conclude that Judge Chin did permissibly take judicial notice of the fact that there are many kinds of rain hats for sale, and therefore we need not consider whether he "testified" at a trial over which he was presiding.

7

buy," A. 89a, we review Judge Chin's decision to consider that fact as evidence for plain error.[5]

Under Rule 201, "[a] court may take judicial notice, whether requested or not" of a fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)-(c); *see also* Black's Law Dictionary 923 (9th ed. 2009) (defining judicial notice as "[a] court's acceptance, for purposes of convenience and without requiring a party's proof, of a well-known and indisputable fact"). More generally, the "traditional textbook treatment" of Rule 201 has included two categories for judicial notice: "matters of common knowledge" and "facts capable of verification." Fed. R. Evid. 201, Advisory Committee Notes, Note to Subdivision (b).

Here, the District Court made a statement on a "matter[ ] of common knowledge." *Id.*; *cf. Kaggen v. IRS*, 71 F.3d 1018, 1019 (2d Cir. 1995) (holding that "[t]his Court may appropriately take judicial notice of the fact that banks send customers monthly bank statements"). Common sense leads one to suppose that there is not only one type of yellow rain hat for sale. Instead, one would imagine that there are many types of yellow rain hats, with one sufficient to suit nearly any taste in brim-width or shade. The District Court's independent Internet search served only to confirm this common sense supposition.

Bari argues in his reply brief[6] that "Judge Chin undertook his internet search precisely because the fact at issue . . . was an open question whose answer was not obvious." Reply Br. 8. We

---

[5] We note, however, that plain error review would not apply if Rule 605 governed our inquiry because "[n]o objection need be made in order to preserve the point." Fed. R. Evid. 605.

[6] We note that although we normally will not consider *issues* raised only in reply briefs, *see, e.g., Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009); *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998), we will consider *arguments* raised in response to arguments made in appellee's brief.

8

do not find this argument persuasive. As broadband speeds increase and Internet search engines improve, the cost of confirming one's intuitions decreases. Twenty years ago, to confirm an intuition about the variety of rain hats, a trial judge may have needed to travel to a local department store to survey the rain hats on offer. Rather than expend that time, he likely would have relied on his common sense to take judicial notice of the fact that not all rain hats are alike. Today, however, a judge need only take a few moments to confirm his intuition by conducting a basic Internet search. *See Reno v. ACLU*, 521 U.S. 844, 853 (1997) ("The Web is . . . comparable . . . to both a vast library including millions of readily available and indexed publications and a sprawling mall offering goods and services.").

As the cost of confirming one's intuition decreases, we would expect to see more judges doing just that. More generally, with so much information at our fingertips (almost literally), we all likely confirm hunches with a brief visit to our favorite search engine that in the not-so-distant past would have gone unconfirmed. We will not consider it reversible error when a judge, during the course of a revocation hearing where only a relaxed form of Rule 201 applies, states that he confirmed his intuition on a "matter[ ] of common knowledge."

## CONCLUSION

In summary, we hold as follows:

(1) The Federal Rules of Evidence, except those governing privileges, do not apply with their full force in supervised release revocation hearings; and

(2) In the circumstances presented here, it was not reversible error for a judge to employ an Internet search to confirm a reasonable intuition on a matter of common knowledge.

For the foregoing reasons, the judgment of the District Court is **AFFIRMED.**

9