2010 VT 89

## State of Vermont v. Randall Joseph Gokey

[14 A.3d 243]

No. 09-131

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed October 8, 2010

502

*David W. Gartenstein*, Windham County Deputy State's Attorney, Brattleboro, for Plaintiff-Appellee.

*Matthew F. Valerio*, Defender General, and *Rebecca Turner*, Appellate Defender, Montpelier, for Defendant-Appellant.

¶ 1. **Skoglund, J.** Defendant Randall Gokey appeals from his conviction by a jury for lewd or lascivious conduct with a child. He was found to have been convicted previously of three other felonies, was adjudged to be a habitual offender, and received a sentence of twenty years to life. He argues on appeal that the trial court made numerous, substantial errors when considering his competency to stand trial. Because the lower court stepped outside its role as impartial arbiter during the course of the trial, we reverse and remand for a new trial.

¶ 2. Defendant was charged by the State with alleged acts he perpetrated upon his step-granddaughter on August 3, 2007. On August 31, 2007, the State filed a habitual offender notice under 13 V.S.A. § 11, a probable cause affidavit, and an information

regarding defendant's criminal record and the penalty sought in the present matter. A jury was chosen and trial began on August 25, 2008.

¶ 3. The events that provide the backdrop for the present appeal occurred on the second and third full days of trial. On the morning of the second day of trial, defense counsel raised concerns regarding defendant's health. Defendant had informed his attorney that he was not feeling well and could not concentrate; counsel relayed his statements to the court and noted defendant did not look well and appeared ready to collapse. The prosecutor explained to the court that he was aware that defendant had medical issues and that, during a previous trial, medical personnel were called to assist defendant. Defense counsel added that defendant had asked her that morning: "how [he] can have a jury trial when [he] can't concentrate" and did not feel well. The judge stated that the trial was "going to have to go forward," but, with agreement from the State, granted a continuance until the early afternoon for medical personnel to examine defendant. During this recess an ambulance transported defendant to the emergency room of a nearby hospital.

¶ 4. The trial resumed that afternoon, and defense counsel reported that defendant was still at the hospital and "that [doctors] were going to give him medication to sleep. [She] checked with the family and they — apparently, when they think he's going to have a seizure, they try to put him to sleep . . . . [I]f it's true that they're going to give him sleep medication, there's certainly no way we can go forward."[1] The trial judge stated that she had similarly discovered that defendant was "on anti-seizure medicine and that that medicine had kind of kicked in and that if he wasn't on that medicine, he would have been having a seizure . . . [and] that they were going to be giving him medication which was going to put him to sleep." The judge continued, "I don't think we can go forward today," and suspended trial until the next day, August 28.

¶ 5. When proceedings opened the next morning, defense counsel explained defendant's present health status, noting that he had been treated for vertigo at the hospital and that he had taken his "regular" medication the night before and again that morning.

---

[1] The family apparently was commenting on their typical response to defendant's chronic medical condition.

That morning, in addition to his regular medication, he also took the medication prescribed by the emergency room doctors the day before. Defense counsel stated that defendant had told her he was feeling sleepy but wanted to go forward with the trial; however, she noted her serious doubts as to whether defendant's health would improve markedly for that day or the following day.

¶ 6. After the judge questioned defense counsel about defendant's medical history, she offered her own opinion: "I'm a little concerned that he took that [anti-seizure] medication this morning, I mean, knowing that we were starting up this trial again, to take the medication that prevented him from coming back yesterday, again this morning, is kind of counter-productive to going forward with this." The judge attempted to question defendant, but he was unresponsive. She, thereupon, called defense counsel, the prosecutor, and an officer who had transported defendant to court that morning to the bench for a conference.

¶ 7. At conference, the judge expressed misgivings regarding defendant's apparent health — "[o]f course I have to wonder if this is, you know, real" — and then elicited information from the transporting officer. The officer reported that defendant appeared "fine" during the drive to court that morning, was able to walk unaided to the car, and had requested a cigarette. After the judge reiterated her "concerns about [defendant's symptoms] being real," the officer volunteered that a second transport officer could corroborate his story. The court then ruled on defendant's request for a continuance, finding that:

> from the transport officers and looking at Mr. Gokey at this point, who, I should put on the record, is sitting, acting as if he's sleeping at his table, is inconsistent with what the officer said his behavior was like the entire morning . . . . [H]e had taken his medication, asked for a cigarette, . . . didn't show any signs of being tired in the holding cell, and that this kind of behavior started as soon as his attorney went into the holding cell. So, I know that we're close to the end of the trial, and we're going to go forward based on the information that I have at this time.

Defense counsel objected on the record and explained "I don't think I can proceed. I don't think my client is in a position to be able to assist me at all." The prosecutor, in answer to the judge's

request for further information on his experience with defendant's previous medical issues, recounted that "rescue was called after-hours while the jury was out in one of the last two trials and [defendant] was transferred to [a nearby hospital] possibly with a seizure, an epileptic seizure was my understanding." The judge granted a thirty-minute continuance after the prosecutor offered not to "object to a half-hour or an hour for [defense counsel] to consult with [defendant's doctor] to clear up the record." Though allowing the defense thirty minutes, the judge reminded everyone that she was questioning "the veracity of all of this."

¶ 8. During the thirty minute recess, defense counsel attempted to contact both the doctor who treated defendant at the emergency room and defendant's regular physician without success; she did reach a nurse at defendant's holding facility to confirm the medication defendant took that morning, but the nurse refused to provide any information until she could verify defendant's information release. After the recess and back on the record, defense counsel explained her inability to procure relevant information. The judge then offered a summary of her own actions during the break:

> The first thing I did was call Walgreen's and talk to the pharmacy manager there, who I do not know. His name is Dave. I don't think I've ever met him and I don't go to that pharmacy and that's why I called that one. He told me that the dose of medication that Mr. Gokey is [on is] a high dose of medication. That certain people react to things in different ways, and it also depends on what other types of medication they're taking, and that drowsiness is a side effect of the medication, Meclizine. I described to him what [the transporting officer] had said at the bench about how quickly this came on today and he said that that is inconsistent with the effects of this medication.

The judge next recounted to the court a second conversation she held in chambers with the two transport officers "to get an indication from them as to Mr. Gokey's behavior yesterday after taking his medication." She declared that "based on everything I've heard, I believe . . . that Mr. Gokey is malingering at this point." Neither defense counsel nor the State received any notice of or were present at either of the judge's conversations with the

pharmacy manager or the two transport officers. Having introduced the substance of the discussions, the judge then called the officers to the stand and questioned them under oath about defendant's conduct during transport and while in the court's holding cell. After she finished questioning the deputies, both defense and prosecution were provided an opportunity to question the officers. The State did not ask any questions; defense counsel did not question the first officer, but inquired of the second the number of persons in defendant's holding cell at the time the officer observed his condition.

¶ 9. At the close of this testimony, defense counsel notified the court that the nurse at the jail was ready to transmit the list of medications defendant had taken during the morning, so long as the court faxed the nurse an order to release the information. Defense counsel also argued a doctor would be needed to interpret the medications and explain their side effects. Finally, she noted that the pharmacy manager the court had contacted was not present in court. The judge responded, "I know and that's why I put it on the record, because it's clearly not evidence." The court refused to hear any more evidence or grant the order to release information and decided to proceed:

> I think that, from what I've heard, clearly what the pharmacist told was just for some information and I related to the parties as just that. He's not here, but what I do rely on is the sworn testimony of the transport officers, and I'm fairly convinced at this point that this demeanor that Mr. Gokey has . . . presented . . . this morning is something that has been voluntary on his part . . . . So I — I have every indication that, at this point, he's feigning these symptoms in an effort to prolong this trial.

The trial resumed, and the jury was called into court. After the defense put on two more witnesses, the case was submitted to the jury, which returned a guilty verdict.

¶ 10. When sentencing defendant seven months later, the judge rebuked him for his "manipulative kind of behavior . . . , which in the Court's mind, is very relevant to a sex offender's likelihood to reoffend in the future. I recall during this trial you, and I'll say it now, pretending that you were falling asleep, pretending that you had medical issues that needed to be attended to." The judge

sentenced defendant to twenty years to life, and this appeal followed.

¶ 11. Defendant asserts that the judge abused her discretion in deciding he was competent to stand trial and that the trial should proceed. In particular, defendant argues that by conducting ex parte conversations when adjudicating his competency, the trial judge violated Vermont Rule of Evidence 605 — prohibiting a judge from testifying at a trial over which she is presiding — and several sections of the Code of Judicial Conduct. Defendant further argues that the judge violated his due process rights when she engaged in her own fact-finding investigation, injected the results of that investigation into the court proceedings, and limited his ability to present rebuttal evidence on the issue.

¶ 12. Our standard of review in this case is deferential. Defendant's appeal focuses on the trial judge's actions in finding him competent and limiting his requested continuance, a determination in which she was both finder of fact and arbiter. We will examine a trial court's decision whether to have a competency hearing for an abuse of discretion. *State v. Merchant*, 173 Vt. 249, 254-55, 790 A.2d 386, 391-92 (2001). We review a determination of competency under the clearly erroneous standard. *State v. Bean*, 171 Vt. 290, 295, 762 A.2d 1259, 1262 (2000) ("[I]t is the trial court's responsibility, in the first instance, to evaluate the evidence and to determine whether defendant's competency meets the constitutional standard. See 13 V.S.A. § 4817(b). If the court's findings are supported by credible evidence and not clearly erroneous, they must be upheld.").

¶ 13. If the issue before us is viewed as a denial of a continuance request, which the State rightly suggests requires a finding of prejudice resulting from the trial court's abuse of discretion, our review would remain largely the same. See *Finkle v. Town of Rochester*, 140 Vt. 287, 289, 438 A.2d 390, 392 (1981) ("A decision to grant or deny a continuance is a discretionary matter and will not be disturbed unless there is shown an abuse of discretion which causes prejudice."). As explained below, the violation of the Rules of Evidence and resulting prejudice necessarily satisfy this additional threshold.

■ ¶ 14. We begin our analysis of defendant's arguments with the claim that the judge assumed the role of a witness — in violation of V.R.E. 605 — by conducting ex parte communications

with the transporting officers and a not-fully-identified pharmacy manager and inserting the information gathered into the proceeding. Rule 605 states "A judge sitting at the trial may not testify in that trial as a witness. No objection need be made in order to preserve the point." As with the substantially similar federal rule, see Reporter's Notes, V.R.E. 605, the rationale behind Rule 605 is to preserve the appearance of a judge's impartiality toward the parties to the litigation. 3 J. McLaughlin, et al., Weinstein's Federal Evidence 2d § 605.02, at 605-5 (2d ed. 2009). We have recognized that when a judge acts as witness in a case over which she is presiding it may cast a "suspicion of partiality or undue influence" upon the proceedings and could lead to "unseemly and embarrassing results." *State v. Bissell*, 106 Vt. 80, 95, 170 A. 102, 109 (1934) (recognizing grounds for mistrial had assistant judge testified in trial upon which he sat).

■ ¶ 15. We are also aware that the testimony Rule 605 seeks to prohibit is not limited to statements formally given from the witness stand, as the dissent argues, but can be brought into the proceedings through other means.[2] See, e.g., *Lillie v. United States*, 953 F.2d 1188, 1191 (10th Cir. 1992) (reversible error when judge viewed scene of accident without providing notice to parties or opportunity to attend, nor provided court record of viewing because "[w]hen a judge engages in off-the-record fact gathering, he essentially has become a witness in the case"); *Price Bros. Co. v. Phila. Gear Corp.*, 629 F.2d 444, 447 (6th Cir. 1980) (ruling that F.R.E. 605 prevented trial judge from sending law clerk to gather evidence in bench trial because "[a] rule that merely prohibits a presiding judge from testifying in open court . . . does not insure that the fact finder will be free from external causes tending to disturb the exercise of deliberate and unbiased judgment where the trial is to the bench" (quotation omitted)); *State v. Barker*, 420 N.W.2d 695, 697, 699 (Neb. 1988) (vacating sentence where judge met with victim's family ex parte and off-the-record because a "judge should not initiate, invite, or consider an ex parte communication concerning a pending or impending proceeding before the

---

[2] Indeed, to take the dissent's interpretation to its logical conclusion, a party could submit a sworn statement from the presiding judge as evidence and not run afoul of Rule 605, merely because the judge did not switch her seat or shift her robe. Cf. *In re T.T.*, 39 S.W.3d 355, 359 (Tex. App. 2001) (reversing trial court for violating Rule 605 by admitting written findings of fact concerning the case at bar and made by presiding judge in earlier proceeding).

judge," even though judge stated he "was in no way prejudiced by the meeting"); *In re T.T.*, 39 S.W.3d at 359; see generally 3 J. McLaughlin, et al., *supra*, § 605.07, at 605-20 to 605-23 (discussing F.R.E. 605 violations where judge never formally testified on witness stand and listing cases). Such outside research is especially damaging when the judge sits as finder of fact, as the trial judge did here when determining defendant's competency.

¶ 16. There is no dispute that the trial judge undertook her own off-the-record fact gathering and initiated ex parte communications when looking into defendant's reaction to the prescribed medication. Her call to a neighborhood pharmacy, regardless of whether she knew the pharmacy manager, involved fact-finding outside the presence of either party which influenced her ultimate decision on defendant's ability to assist counsel. Though the judge expressly noted that the pharmacy manager's opinion was "not evidence" and was just "some information," before making the call she had stated that she believed defendant to be malingering and noted that she had "no medical evidence in front of me that [defendant] is, you know, acting the way he is and that's a normal way to be reacting based on the medicine that he's been given." She called the pharmacy manager directly after making this statement. In light of the doubt the judge expressed from the bench, the fact that on her own accord she reached out to a third party to obtain information about the possible side effects of defendant's medication could reasonably give defendant the impression that she had stepped out of her role as neutral judge to disprove his alleged condition. Moreover, the judge's subsequent refusal to permit defendant to provide any additional medical evidence about the drugs he had taken or their possible side effects strongly suggests that she had little further question about the veracity of defendant's condition following her phone call with "Dave." Indeed, she initiated this contact before defense counsel even had an opportunity to present any evidence to the court on the medication's possible impact. The judge's gathering of information was done in violation of the Rules of Evidence — and with significant detriment to the court's appearance of impartiality.

¶ 17. We are equally concerned with the judge's ex parte interview of the two transporting officers before putting them both on the stand. The trial judge spoke with one officer at the bench conference and determined that defendant had not dis-

played symptoms of drowsiness at any point before meeting defense counsel that morning. She called both officers into her chambers to discuss the matter further — without notice to or the presence of either attorney and without any formal record. Her later questioning of the two officers on the stand may have brought some of the substance of this in-chambers interview into formal evidence, but, as with her call to the pharmacy manager, it is impossible for this Court to know what further information may have been shared behind the closed doors of chambers. Thus, it is impossible to adequately review whether or not the private conversation inappropriately affected the judge's decision. This fact highlights one of the reasons ex parte contacts with a judge are impermissible when they address a matter pending before the judge: They leave no record for the reviewing court on appeal. See *Am. Family Mut. Ins. Co. v. Shannon*, 356 N.W.2d 175, 179 (Wis. 1984) (holding that trial judge sitting as finder of fact erred by making unnoticed and unrecorded visit to accident scene because, in part, such actions "are outside the record and therefore beyond this court's reach in its review").

¶ 18. Our Code of Judicial Conduct supports this recognition of the primacy of judicial impartiality underlying Rule 605 and further guides our understanding of this case. Canon 3(B)(7) states: "A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding." A.O. 10 Canon 3(B)(7). Here, we have found that the trial judge initiated contact ex parte with the pharmacy manager and the two transporting officers, and under the plain language of the Canon, it is of no moment whether she considered what she learned through these contacts in making her ruling on defendant's competence — the Canon forbids virtually all such communication with a judge without the parties being present.[3]

¶ 19. We think it is important to note that the State has not argued that the judge was taking judicial notice of the information

---

[3] As in *Velardo v. Ovitt*, 2007 VT 69, ¶ 1 n.1, 182 Vt. 180, 933 A.2d 227, we rely on the Code as a source of law without ruling on disciplinary consequences for any possible violation. See *In re Hill*, 152 Vt. 548, 555, 568 A.2d 361, 365 (1989) (per curiam) (stating that this Court holds disciplinary authority over judicial officers of this state but Judicial Conduct Board, not this Court, fulfills this responsibility "in the first instance").

she learned from the pharmacy manager, nor would the record or law support such a contention. The Rules of Evidence permit judicial notice of adjudicative facts, meaning a fact "not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." V.R.E. 201(b). Similarly, Canon 3(B)(7) provides an exception to the general prohibition against ex parte contacts: it allows for a judge to "obtain the advice of a disinterested expert on the law applicable to a proceeding before the judge if the judge gives notice to the parties of the person consulted and the substance of the advice, and affords the parties reasonable opportunity to respond." A.O. 10 Canon 3(B)(7)(b). In this instance, the trial judge gave notice to the parties that she had called a pharmacy manager but could not identify who he was or even if he was actually a pharmacist. She briefly stated what she had learned from him, but expressly denied defense counsel's request to bring in potentially contradictory testimony. Even the information she shared with the parties was of an equivocal nature because, as she reported, the pharmacy manager recognized that "people react to [medication] in different ways, and it also depends on what other types of medication [defendant was] taking." It is not suggested that the manager knew anything about defendant, his medical condition or other medication he might be taking. This was not an instance where the trial judge was taking judicial notice of an adjudicative fact — the medication's effect on defendant was not "capable of accurate and ready determination" from an unknown, unsworn person. V.R.E. 201; cf. *United States v. Bari*, 599 F.3d 176, 180-81 (2d Cir. 2010) (per curiam) (affirming trial judge's Google search for general information regarding availability of type of rain hat worn by defendant in bank robbery as "matter of common knowledge"). Nor was this a situation where a judge seeks to educate herself on a matter of consequence at trial and accordingly informs the parties she will be reviewing a medical study or treatise, thus allowing both sides the opportunity to challenge or support the source at a hearing.

¶ 20. Defendant urges us to adopt a standard that when a judge acts as a witness in violation of Rule 605 prejudice is presumed and the judgment must be reversed. Several other state courts have done so in similar contexts, recognizing that "imposing a burden on a litigant to prove prejudice through the testimony of

one disqualified from testifying is an impossible standard." *Barker*, 420 N.W.2d at 702 (noting that proving judge's prejudice after his ex parte meeting with victim's family would require testimony in contravention of Rule 605). In *State v. McCrary*, the South Dakota Supreme Court addressed an appeal where the sentencing judge had sua sponte contacted the victim's therapist off the record to inquire about the defendant's guilt. 2004 SD 18, ¶ 32, 676 N.W.2d 116. In reversing the defendant's sentence, the court held that "[p]rejudice is implicit in the judge's invitation or initiation of an improper ex parte communication," *id.* (quotation omitted), because a "judge simply cannot be both a judge and a prosecutor searching out facts favorable to the state without abandoning his or her judicial neutrality." *Id.* ¶ 33. Where, as here, a judge has cast aside the mantle of impartiality and given a criminal defendant substantial reason to doubt her even-handed ruling in his case by engaging in her own fact gathering — even where the ultimate issue of guilt or innocence was not in her hands — we cannot abide by some ex post facto weighing of prejudice. It is entirely possible that defendant was malingering to delay his ultimate conviction, but that does not give a judge the license to reach beyond the proceedings to try to prove her suspicions. That is the role of the advocates. Therefore, guided by the fundamental principle of equality before the law, we hold that when a judge acts in violation of V.R.E. 605, we require no further showing of prejudice toward the injured party and will reverse the court's tainted ruling.

¶ 21. Here, the trial court's initiation of the ex parte communications, whether actually relied upon or not, severely impaired, if not completely ruined, any appearance of neutrality, and we must presume prejudice to defendant. Though the judge stated the call to the pharmacy and the in camera meeting with the officers was not evidence — indeed in ruling on defendant's competence she claimed she "rel[ied only] on . . . the sworn testimony of the transport officers" — the damage to the appearance of impartiality had been done. This strict standard assuming prejudice is especially important when it is the trial judge who acts inappropriately because any challenge to her authority necessarily places the lawyer in the untenable position of having to decide whether to let the statement go unchallenged or risk antagonizing the trial judge by questioning her impartiality. See F.R.E. 605 advisory committee's note. Rule 605 itself supports

adoption of this standard as it expressly notes that: "No objection [to a judge testifying as witness] need be made in order to preserve the point." We likewise hold that no showing of prejudice is required.[4]

■ ■ ¶ 22. Our holding that defendant need prove no prejudice resolves this case. However, we make one final comment on defendant's claim that his due process rights were violated when he was denied the ability to fully argue his incompetence in the trial court. Trying an incompetent defendant deprives him of his due process rights to a fair trial under both the Federal and Vermont Constitutions. *Pate v. Robinson*, 383 U.S. 375, 385 (1966); *State v. Beaudoin*, 2008 VT 133, ¶ 8, 185 Vt. 164, 970 A.2d 39; see also 13 V.S.A. § 4817(a) ("A person shall not be tried for a criminal offense if he or she is incompetent to stand trial."). The procedure described in 13 V.S.A. § 4817 gives the trial court some latitude in determining whether or not to hold a competency hearing. See *Merchant*, 173 Vt. at 254, 790 A.2d at 391 ("The trial court has a duty to . . . conduct a competency hearing [under § 4817] only where the court has reason to believe that such person may be incompetent."); *State v. O'Connell*, 149 Vt. 114, 116-17, 540 A.2d 1030, 1031-32 (1987) (holding that competency hearing not required when judge, alone, raises issue of competency). That said, the "keystone is the court's responsiveness to the competency question, whenever and however it is raised." *In re Hanson*, 160 Vt. 111, 114, 623 A.2d 466, 468 (1993). We have recognized the "manifest purpose of § 4817(b) is to prevent the trial of a defendant who is not competent to stand trial, and in carrying out that purpose, to resolve any disputes about competency *through an adversarial hearing*." *Id.* (emphasis added).

■ ¶ 23. Defendant was denied the opportunity for an adversarial hearing on his competency in two distinct ways. First, as explained fully above, he had no opportunity to hear or confront the evidence the trial judge obtained from her ex parte investigations. Second, once the judge determined that a hearing

---

[4] In so holding, we understand that under this ruling and the text of Rule 605 a judge might have no warning before a party raises a claim of reversible prejudice after trial, as no objection need be voiced during the proceedings. We do not pass lightly on this issue, but recognize the heartening absence of instances in which members of the trial bench have violated Rule 605 and the serious damage any such violation can do to the vital public trust.

was necessary and placed the transporting officers on the stand to testify, she was obligated to provide defendant with an opportunity to respond and present evidence. See *id.*; accord *Pua v. Hilo Tribune-Herald, Ltd.*, 1929 WL 3042, at *3 (Haw. 1929) ("All parties must be fully apprised of the evidence submitted or to be considered, and must be given opportunity to . . . offer evidence in explanation or rebuttal. In no other way can a party maintain its rights or make its defense. In no other way can it test the sufficiency of the facts to support the finding." (quotation omitted)). Though defense counsel was able to cross-examine one of the transporting officers, the judge denied her the chance to present any contradictory relevant evidence. After the final thirty-minute continuance, defense counsel informed the judge that she could provide a list of defendant's medications — the same medications allegedly rendering him temporarily incompetent — upon the judge's order. The judge had no evidence as to the actual doses or types of medication defendant had taken. Defense counsel likewise indicated that she could get a doctor to testify by telephone about the potential impacts of the medication upon defendant; again the judge had no formal evidence on this seemingly crucial question. Instead, the judge summarily denied defense counsel's requests and went forward with the trial.

¶ 24. We note that interests of judicial economy are prevalent in today's courtrooms and rightly so. We likewise acknowledge the potential waste of limited resources that could result from the indeterminate suspension of a criminal trial. Conservation of scarce judicial resources, however, does not justify denial of defendant's due process rights or permit violation of the public trust. Serious questions arise as to the promise of "an independent, fair and competent judiciary" interpreting and applying the laws that govern all of us where such economy occurs at the expense of a defendant's constitutional rights. A.O. 10 Preamble [1].

*Reversed and remanded for a new trial.*

¶ 25. **Reiber, C.J.,** dissenting. I recognize that what the trial judge did here was unorthodox, and I agree with the majority that it may have raised the appearance of a lack of impartiality. At the very least, the judge's actions — holding ex parte communications with two officers and a pharmacy manager during the middle of a trial — raise questions regarding compliance with

Vermont Rule of Criminal Procedure 26(a), which, like its counterpart in Vermont Rule of Civil Procedure 43(a), generally requires that "the testimony of witnesses shall be taken orally in open court." Nevertheless, defendant cannot prevail under this rule because defense counsel never made this argument before the trial court, and the "failure to promptly raise the issue before the trial court results in a waiver." *State v. Hinchliffe*, 2009 VT 111, ¶ 31, 186 Vt. 487, 987 A.2d 988 (quotations omitted); accord, e.g., *State v. Ben-Mont Corp.*, 163 Vt. 53, 61, 652 A.2d 1004, 1009 (1994) ("To properly preserve an issue for appeal a party must present the issue with specificity and clarity in a manner which gives the trial court a fair opportunity to rule on it."). Indeed, at trial, defendant failed to present *any* specific arguments or objections to the court's process in deciding the question of defendant's competency — a process that was fully disclosed to counsel and to which no objection was raised. As a result, defendant failed to preserve *any* arguments for appeal under Rule 26(a). Thus defendant's appeal now relies primarily on Vermont Rule of Evidence 605. Unlike V.R.Cr.P. 26(a), which is subject to waiver and was in fact waived here, V.R.E. 605 explicitly states that no objection is needed to preserve an alleged violation. The problem for defendant is that, whatever missteps the trial judge may have made, the ex parte communications that occurred here were not a violation of Rule 605. Further, if any error occurred, it was harmless. I would affirm both the conviction and the sentence. I therefore dissent.

¶ 26. The majority's decision today represents the first time that this Court has ever found a violation of Vermont Rule of Evidence 605. The majority notes that it is "hearten[ed]" by the conspicuous "absence of instances in which members of the trial bench have violated Rule 605." *Ante*, ¶ 21 n.4. The absence of such violations is no coincidence; it is the result of the fact that it takes a truly radical act far beyond what occurred here to violate this rule. Rule 605 bans something very specific: a "judge sitting at the trial may not *testify* in that trial *as a witness*." V.R.E. 605 (emphases added). This is a bright-line rule that prohibits presiding judges from literally stepping away from the bench, sitting in the witness stand, taking an oath, and giving actual "testimony . . . as a witness." *Id.* Such a scenario is so obviously imprudent that it is no wonder that we have never before found a judge in violation of Rule 605.

¶ 27. This bright-line rule says nothing about what a judge may or may not do in chambers, nor does the rule address ex parte communications or say anything about what sources a judge may or may not use in making a decision.[5] All that matters for purposes of Rule 605 is whether the trial judge gave testimony as a witness. The majority errs in characterizing the trial judge's statements below as testimony. Although the two transporting officers and the pharmacy manager may have provided information during their ex parte communications with the trial judge, the judge was not testifying when she recited that information by properly reporting it to counsel. Thus, because the trial judge did not testify, there was no violation of Rule 605. See *State v. Bissell*, 106 Vt. 80, 95, 170 A. 102, 109 (1934) (applying common-law predecessor to Rule 605 and concluding that "the judge did not testify, so the rule does not apply").

¶ 28. Rule 605 aims only to prevent judges from being both a judge and a witness in the same case. As the Reporter's Notes state, Rule 605 serves to remind judges that they should "disqualif[y]" themselves in certain situations "either because of the nature of [the judge's] interest in the case or because his [or her] testimony was essential to one of the parties." Here, the trial judge did not have any special interest in the case (as evidenced by the fact that no motion for recusal was filed during trial), and the judge never provided testimony. There was therefore no violation of Rule 605. See Reporter's Notes, Rule 605. *In re T.T.*, 39 S.W.3d 355 (Tex. App. 2001), cited· by the majority, provides little guidance. In that case, a judge presiding at a jury trial to terminate parental rights admitted his own findings of fact from a preliminary hearing that declared the couple's child in need of state supervision. The jury then returned a decision to terminate the parents' rights. On appeal, the Texas intermediate appellate court noted that the judge's findings that the parents posed a danger to the health or safety of the children was precisely the finding which the jury was meant to decide. *Id.* at 358. Unlike the case in *In re T.T.*, the issue about which our trial judge spoke was not the ultimate issue of fact for the jury; in fact it was irrelevant

---

[5] The majority correctly recognizes that any alleged violations of the Code of Judicial Conduct are not properly before the Court in this proceeding. *Ante*, ¶ 18 n.3 (citing *In re Hill*, 152 Vt. 548, 555, 568 A.2d 361, 365 (1989) (per curiam), for the proposition that it is for the Judicial Conduct Board, not this Court, to address alleged ethical violations "in the first instance").

to a resolution of the case on the merits. This was not a situation in which the judge was replacing the jury's judgment with her own.

¶ 29. The majority goes too far when it concludes "that the testimony Rule 605 seeks to prohibit is not limited to statements formally given from the witness stand . . . but can be brought into the proceedings through other means." *Ante,* ¶ 15. The majority cites nothing from Rule 605 or the Reporter's Notes that supports this conclusion. Nor does the majority cite a single case from this Court that has ever adopted such an expansive view of Rule 605. To the contrary, in the rare situations where we have addressed this rule or its common-law predecessor, we have interpreted it literally and narrowly. See *In re Odessa Corp.,* 2006 VT 35, ¶ 11, 179 Vt. 640, 898 A.2d 1256 (mem.) (citing Rule 605 as support for holding that Liquor Control Board members "did not err in refusing to testify" to ex parte communications related to a proceeding that it was conducting); *Bissell,* 106 Vt. at 95, 170 A. at 109 ("[T]he judge did not testify, so the rule does not apply.").

¶ 30. All of the cases that the majority cites for its overly broad view of Rule 605 involve exceptionally blatant violations of rules that, like Vermont Rule of Criminal Procedure 26(a) and Vermont Rule of Civil Procedure 43(a), require that "the testimony of witnesses shall be taken orally in open court." See *Lillie v. United States,* 953 F.2d 1188, 1191 (10th Cir. 1992) (citing Federal Rule of Civil Procedure 43(a) as an alternative ground for reversing trial court's actions when judge visited scene of accident and might have used knowledge gained from that visit as a basis for factual findings); *State v. Barker,* 420 N.W.2d 695, 699 (Neb. 1988) (granting a motion to recuse trial judge where judge met with victim's family ex parte and off-the-record). Here, no motion to recuse was filed. At best, defendant might have argued that Vermont Rule of Criminal Procedure 26(a) formed a basis for challenging these actions, but, as mentioned earlier, defendant failed to preserve this argument at the trial level and therefore cannot present it on appeal. Rule 605 is not the proper vehicle for challenging whether evidence was taken ex parte.

¶ 31. The trial judge's decision here regarding defendant's competency was a decision to be made by only the judge, within her discretion, and not by the jury. The judge's statements were made only to counsel, not to the jury, and do not raise the more problematic situation of a judge giving *the jury* information that

was not otherwise presented in court. Cf., e.g., *United States v. Nickl*, 427 F.3d 1286, 1294 (10th Cir. 2005) (holding that Rule 605 was violated when trial judge made statements to jury that "added new evidence" regarding "an ultimate factual issue to be decided by the jury"). In essence, the majority's decision today goes beyond what other courts have previously done and shoehorns the trial judge's actions on these narrow facts into a violation of Rule 605 — a rule that serves a different purpose.

¶ 32. The majority's expanded view of Rule 605 is also worrisome because it adopts a per se rule of prejudice for violations of this rule. See *ante*, ¶ 20 ("[G]uided by the fundamental principle of equality before the law, . . . when a judge acts in violation of V.R.E. 605, we require no further showing of prejudice toward the injured party and will reverse the court's tainted ruling."). The majority cites two cases from other jurisdictions to support this rule of per se prejudice. See *Barker*, 420 N.W.2d at 699; *State v. McCrary*, 2004 SD 18, ¶ 32, 676 N.W.2d 116. But other courts have reached the opposite conclusion and chosen to apply a harmless-error analysis that requires prejudice before a reversal will be granted. See, e.g., *Nickl*, 427 F.3d at 1293 ("If a violation of Rule 605 has occurred, it is then necessary to consider whether the violation was prejudicial or harmless."); *Elmore v. State*, 682 S.W.2d 758, 762 (Ark. Ct. App. 1985) (holding it "was clearly error" where trial judge failed to recuse himself when it became clear he would be a witness in the case, and "emphasiz[ing] the need for trial judges to diligently avoid all appearances of impropriety," but concluding that error was not prejudicial and therefore denying new trial). The approach of these courts is consistent with our general rule that we may uphold a criminal conviction if we find that any errors that occurred were harmless beyond a reasonable doubt. *State v. Lipka*, 174 Vt. 377, 384, 817 A.2d 27, 33 (2002).

¶ 33. In my view, any errors that occurred here were harmless beyond a reasonable doubt. The trial judge explicitly reported on her conversations and stated that her conversations in chambers were "clearly not evidence," but were "just for some information." The information that was received disclosed no prejudgment by the judge based on her conversations in chambers. Rather, as the majority recognizes, the information "was of an equivocal nature." *Ante*, ¶ 19. Indeed, the judge noted that the pharmacy manager told her that "drowsiness is a side effect of the medication,

Meclizine," that "people react to [medication] in different ways," and that the type of reaction someone will have "depends on what other types of medication [the person] was taking" — facts that supported defendant's claim of incompetency. The pharmacy manager was not thereafter subpoenaed by either attorney, and, although defense counsel stated that it was "an issue" that the pharmacy manager was not there, no request was made by either attorney for time to subpoena him. Later, when the trial judge was making her ruling on competency, she noted that what she relied on in making her ultimate determination was "the sworn testimony of the transport officers" — testimony that was taken in open court on direct examination by the State with full opportunity for cross-examination by defense counsel.

¶ 34. In evaluating the trial court's ex parte communications and her reports to counsel on the substance of those discussions, we "presume the integrity and honesty of judges." *State v. Davis*, 165 Vt. 240, 249, 683 A.2d 1, 6 (1996); accord, e.g., *Luce v. Cushing*, 2004 VT 117, ¶ 18, 177 Vt. 600, 868 A.2d 672 (mem.) (recognizing that judges are "accorded a presumption of honesty and integrity" (quotation omitted)). Further, we grant trial judges enormous deference in making decisions regarding competency, and we uphold those decisions so long as they are "supported by credible evidence and not clearly erroneous." *State v. Bean*, 171 Vt. 290, 295, 762 A.2d 1259, 1262 (2000). Here, despite the majority's conclusions to the contrary, the testimony provided on the record by the two transport officers was credible and, based on this evidence, it was within the trial court's discretion to rule that defendant was competent to stand trial. Defendant has therefore failed to show prejudice.

¶ 35. Because defendant has not shown that any prejudice occurred from whatever errors the trial court may have made, any alleged violations of defendant's due process rights are also harmless. See, e.g., *State v. Hunt*, 150 Vt. 483, 489-90, 555 A.2d 369, 373-74 (1988) (holding that "the doctrine of harmless error applies" when a due process violation is alleged and affirming a conviction when defendant "failed to demonstrate prejudice"). For these reasons, I would affirm the jury verdict and the sentence. I therefore respectfully dissent.

¶ 36. I am authorized to state that Justice Burgess joins this dissent.