2011 VT 113

### Sara Rutanhira v. Tinotenda Rutanhira

[35 A.3d 143]

No. 10-377

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed September 30, 2011

450

*Cynthia L. Broadfoot* of *Broadfoot & Associates*, Burlington, for Plaintiff-Appellee.

*Tinotenda Rutanhira*, Pro Se, South Burlington, Defendant-Appellant.

¶ 1. **Skoglund, J.** Father appeals a family division order awarding mother primary legal rights and responsibilities for the parties' daughter based on the court's conclusion that father exercised poor judgment in desiring to take his daughter to his birth country, Zimbabwe. On appeal, father contends that the trial court abused its discretion by considering evidence outside of the proceeding. He additionally challenges the court's finding that he

planned to leave daughter in Zimbabwe while he traveled to South Africa and claims the court erred when it considered testimony regarding his desire to travel to Zimbabwe because of an earlier stipulated agreement between the parties. We agree that the trial court erred in relying on evidence gathered outside the proceeding, which father did not have an opportunity to contest, and we reverse and remand for the family court to rehear this matter.

¶ 2. The facts underlying this case are largely uncontested. The parties were married on April 7, 2004, and their daughter was born on March 11, 2005. In August 2009 they separated. Mother filed for a divorce in October 2009. Under a temporary order, the parties shared physical rights and responsibilities for daughter on a roughly equal basis. The parties ultimately agreed to continue sharing physical custody, but could not agree on sharing legal rights. After a two-hour contested hearing where both parties were represented by lawyers, the family court awarded sole legal rights and responsibilities to mother.

¶ 3. The court found that the parties were "very cooperative" in determining daily arrangements for daughter, and the court highlighted the fact that "there is really little to choose from as between these two parents." The parties agreed on where to send daughter to school, her travel around the country, the choice of doctors, dentists, and religion. The court noted only two specific conflicts between the parties. The first involved a disagreement in 2009 about whether daughter should be inoculated with the H1N1 flu vaccine; father eventually supported mother's decision not to inoculate. The second was the real issue of contention: foreign travel.

¶ 4. Father immigrated to the United States from Zimbabwe in 2000 with the rest of his family. He is now a U.S. citizen, and the court noted that he has no intention of moving back to Zimbabwe. In 2009, he expressed a desire to bring daughter to visit Zimbabwe, along with other members of his immediate family, to see his remaining family there. The trip, planned for the summer of 2010, coincided with the World Cup in South Africa. Mother objected. She viewed the trip to Zimbabwe as far too dangerous for daughter. Though father wanted daughter to know her heritage, he ultimately acquiesced to mother's wishes. Nevertheless, this was the issue upon which the family court based its award of legal custody to mother.

¶ 5. The court reasoned that "[t]aking the child to an unstable place . . . would not be a wise idea" and, while the issue of determining whether Zimbabwe was "stable" was not before the court, the court decided to assess father's determination of how safe it was to visit Zimbabwe as a means of evaluating his ability to make decisions regarding daughter's future. During the hearing the court asked father what sources he used to stay current on events in Zimbabwe. Father said he talked regularly with his family there, and he mentioned three websites he used to keep abreast of events in the country. After the close of the hearing, and without notice to the parties, the court visited the Internet sources, all newspaper websites. Though the court did not rely on the sites for the truth of what they said about Zimbabwe — and thus was unconcerned about the information as hearsay — the court read the information therein "as a measure of father's judgment in dealing with a significant issue involving legal rights and responsibilities." The court found that the sites contained articles about disease, famine, and political violence in Zimbabwe, and it concluded that the sources father used to arrive at the decision that it was safe to plan a trip indicated that father's decision-making was "questionable" and "skewed." On this basis, the court granted mother sole legal custody, lamenting that it was "forced to make a choice" and "decide the case on the evidence which has been presented and reasonable inferences to be drawn therefrom." Father timely appealed.

¶ 6. Father argues that the court erred in basing its ruling on Internet sites that were never introduced as evidence. He contests the court's reliance on information gleaned through research that the court conducted after the close of evidence to which he never had any opportunity to respond. He also claims the trial court lacked an evidentiary basis for finding that he planned to leave daughter with family in Zimbabwe while he attended the soccer matches and erred in relying on this finding. Finally, he claims the court should not have considered his plans to travel with daughter to Africa because he and mother had stipulated that his travel plans would not be raised for consideration before the court.

■ ■ ¶ 7. We address father's last argument first because if the court improperly considered the issue of father's travel plans, it lacked a basis for awarding legal custody to mother. Father's claim relies on the stipulation the parties entered into regarding

his plans to travel to Zimbabwe. The relevant passage of the agreement reads:

> 3. The parties stipulate and agree that [father's] travel to Africa from June 4-22 shall not be raised by [mother] for consideration by the Court in any proceeding associated with legal or physical parental rights and responsibilities or contact schedules in the event these issues are the subject of contested proceedings.

Reading the plain language of this agreement, we conclude that it is meant only to cover father's travels to Zimbabwe and South Africa in June of 2010, not his plans to bring daughter to visit her relatives. See *Kim v. Kim*, 173 Vt. 525, 526, 790 A.2d 381, 382-83 (2001) (mem.) (interpreting meaning of divorce stipulation like a contract, looking to plain meaning and context to determine intent). The trial court did not err in considering testimony about father's plans to travel with daughter.[1]

¶ 8. The thornier issue is the court's gathering of information obtained outside of the courtroom and relying on the same without either party having an opportunity to challenge the evidence or formulate an argument to rebut any conclusions drawn from it. We review a family court's award of custody with significant deference and will not overturn its determination so long as it "reflects reasoned judgment in light of the record evidence." *Hazlett v. Toomin*, 2011 VT 73, ¶ 11, 190 Vt. 563, 27 A.3d 328 (mem.) (quotation omitted). Here, we conclude that the trial court impermissibly relied on evidence drawn from outside the court proceeding, and we view such reliance as an abuse of discretion. See *Thompson v. Pafundi*, 2010 VT 80, ¶ 16, 188 Vt. 605, 8 A.3d 476 (mem.) (reviewing factual support for court's legal conclusion for abuse of discretion).

¶ 9. The court's decision to award legal custody to mother was based entirely on father's conclusion that it was safe for daughter to travel with him to Zimbabwe in the summer of 2010. Though father never consummated this plan, the trial court reasoned that the content of the websites father had mentioned,

---

[1] While the trial court did not rule directly on this issue, it heard argument from both parties on the meaning of the stipulation and relied upon testimony that father argued was inadmissible under the stipulation. We treat this reliance as an implicit ruling on the stipulation's proscriptive scope.

at the time father was considering the trip, should have reasonably given him pause concerning the safety of the country where he planned to take his daughter. There are two flaws in the trial court's reliance on these sites in formulating its conclusion.

¶ 10. Our principle concern is that the sites the family court relied upon were not necessarily sources that father used in determining the wisdom of his trip to Zimbabwe. In the context of the hearing, father mentioned the specific sites in response to the court's general question about whether father "kept up on what's happening in Zimbabwe recently." Father concluded by stating that there was extensive information available all over the Internet. Based on this general information, the court examined articles on the sites dating from the previous summer when father had formulated his travel plans and drew its conclusion. In its decision, the court referred to a "sampling" of information the court had viewed on the Internet. Thus, the court focused on a source that father mentioned as part of his general pool of information, and not necessarily a source he relied upon in 2009 when making his decision. Nor can we determine whether the "sampling" of information the court obtained from these sites was exhaustive or selective. It is impossible for us to review the record given the dynamic nature of information on the Internet and the necessarily time-bound query that produced such articles, especially when there is no specificity from the court as to the scope of information viewed. Reliability and permanence of information are constant concerns with Internet-based resources. See *NYC Med. & Neurodiagnostic, P.C. v. Republic W. Ins. Co.*, 798 N.Y.S.2d 309, 313 (App. Div. 2004) (reversing trial court due to reliance on Internet search, in part, because "there was no showing that the Web sites consulted were of undisputed reliability"); see also D. Tennant & L. Seal, *Judicial Ethics & the Internet: May Judges Search the Internet in Evaluating & Deciding a Case?*, 16 Prof. Law. No. 2, 14-16 (2005) (noting accuracy and permanency are two major concerns with court reliance on Internet searches).

¶ 11. The second point of error is related, but more general: a court cannot undertake an Internet search after the submission of a case on an issue material to that case and rely on information or evidence not properly introduced. In doing so, a court denies parties the opportunity to address the information and confront

potentially harmful evidence. There are instances where information obtained through such a search is acceptable under the rules of judicial notice.[2] Cf. *United States v. Bari*, 599 F.3d 176, 180 (2d Cir. 2010) (per curiam) (upholding trial court's use of Internet search to confirm "common sense supposition" under relaxed evidentiary standard); *Magnoni v. Smith & Laquercia, LLP*, 701 F. Supp. 2d 497, 501 (S.D.N.Y. 2010) (taking judicial notice of Internet search to determine brand name of wheelchair as part of court's assessment of witness credibility in bench trial). However, the information the trial court relied upon to make its own assessment of the situation in Zimbabwe was not "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." V.R.E. 201(b). The articles examined by the court, as far as we know, spanned several years and are from sources whose record for accuracy is unknown.

¶ 12. We have held that when a trial court relies on information taken from outside of the proceeding, especially where it involves the central issue before the court, it commits error. See *Siebert v. Siebert*, 124 Vt. 187, 191, 200 A.2d 258, 261 (1964) (reversing trial court when the court relied on its own personal knowledge of parties "as a basis for [its] findings, rather than evidence introduced at the hearing"). Even in the context of judicial notice, our Rules of Evidence demand that the parties receive "an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed." V.R.E. 201(e); see *State v. Gokey*, 2010 VT 89, ¶ 19, 188 Vt. 500, 14 A.3d 243 (noting that absence of adversarial hearing to contest court's ex parte investigation violated Rule 201).

¶ 13. Other appellate courts have reached a similar conclusion when reviewing a trial court's reliance on Internet searches undertaken after the close of the hearing. The Supreme Court of Delaware reversed a family court's property settlement when the court relied on an Internet search to reject one party's evidence. *Tribbitt v. Tribbitt*, 963 A.2d 1128 (Del. 2008). The court in *Tribbitt*

---

[2] Neither party, nor the court, claims that the Internet sites' content was admitted under judicial notice. See V.R.E. 201(b) (listing type of facts that can be noticed as: those "generally known within the territorial jurisdiction of the trial court" and those "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

held that the trial judge could not properly reject the husband's unrefuted expert evidence on the wife's earning capacity based on the judge's outside-the-record computer search of potential jobs for the wife. *Id.* at 1130-31. It went on to recognize that such post-hearing searches violate the rules governing judicial notice because they do not afford the parties an opportunity to be heard on the evidence at issue. *Id.* at 1131; see also *NYC Med. & Neurodiagnostic, P.C.*, 798 N.Y.S.2d at 313 ("In conducting its own independent factual research, the court improperly went outside the record in order to arrive at its conclusions, and deprived the parties an opportunity to respond to its factual findings."); cf. *Ney v. Ney*, 2007 PA Super 38, ¶¶ 11-15, 917 A.2d 863 (concluding that, in absence of other evidence in the record, trial court erred in relying on its independent Internet search, even where search conducted during hearing and party questioned on search results).

■ ¶ 14. Here, the trial court took a portion of father's testimony and conducted its own investigation, using this further investigation to determine the outcome of the case. Neither party could reasonably expect such additional fact-finding, and neither had an opportunity to test any of the evidence acquired through this examination. It was error for the court to rely on this evidence.[3]

■ ¶ 15. We appreciate the difficulty facing the trial court — the challenge of choosing between two equally capable and caring parents. That said, such a dilemma does not give a court license to look outside the submitted evidence and base its ruling on select information that neither party had an opportunity to contest. We remand the cause for adjudication on the issue of legal rights and responsibilities.

*Reversed and remanded.*

---

[3] Given this result, we need not address father's challenge of the sufficiency of the evidence the court used to support its finding that he planned to leave his daughter in Zimbabwe.