2003 VT 39

**Steven and Mary Ann SIMPSON v. Rodney ROOD, Sr.**

[830 A.2d 4]

No. 02-183

¶ 1. March 31, 2003. This is an auto negligence case. Plaintiffs Steven and Mary Ann Simpson appeal from a jury verdict in favor of defendant Rodney Rood, Sr. On appeal, the Simpsons claim that the trial court erred in improperly permitting Rood's cardiologist to testify by telephone. We agree. Therefore we reverse and remand.[1]

¶ 2. The accident occurred just after 7:30 a.m. on January 29, 2000. Steven Simpson was driving his car east on

---

[1] Because we reverse on their first argument, there is no need to reach plaintiffs' second claim that the court erred in refusing to include a jury charge regarding a presumption of negligence for violation of a safety statute.

Route 25. Route 25 is a typical Vermont blacktop highway with a double centerline. Simpson drove below the posted speed limit and wore his three-point seatbelt. Simpson followed a line of three cars as he drove east toward the town of Bradford. The car in front of Simpson suddenly swerved to the left—a large pickup truck was in his lane. There was a guardrail to the right and no breakdown lane. Simpson slammed on his brakes, and collided head-on with the pickup driven by Rood.

¶ 3. The Simpsons brought a negligence action, alleging that Rood caused his truck to hit Steven Simpson's vehicle head-on, causing injury, pain, loss of consortium, and other damages related to the accident. Rood asserted that there was no negligence on his part because the accident resulted from a sudden and unforeseeable episode of cough syncope that caused him to black out while driving. Cough syncope can occur after a prolonged episode of coughing. A combination of factors initiated by such a spell, including low blood pressure, low blood flow to the brain, and decreased heart rate, can result in loss of consciousness.[2]

---

[2] Medically, cough syncope is defined as

> the loss of consciousness that may be induced by a severe spasm of coughing. This is the result of the high pressure that may be induced in the chest ... . by such a spasm. This prevents the return of blood to the heart, the veins in the neck begin to bulge and the blood-pressure falls. This may so reduce the blood flow to the brain that the individual feels giddy and may then lose consciousness.

Black's Medical Dictionary 225-26 (34th ed. 1984).

In perhaps the most well-known case of cough syncope in recent years, Presi-

¶ 4. Rodney Rood is fifty years old. He has a history of cardiac problems, including a heart attack and chronic angina. Rood has undergone bypass surgery and other related procedures. He has continually suffered painful residual symptoms from his heart attack eleven years ago. After the accident, Rood told emergency room doctors, and his own long-term heart specialist, Dr. Nathaniel Niles, that he remembered taking a sip of his coffee, coughing, and then waking up after the collision. He did not recall having any dizziness or angina immediately before the accident. Based on this information, after eliminating a number of other diagnoses, Dr. Niles concluded that Rood's blackout was due to cough syncope, and that the episode could not have been anticipated. Therefore, Dr. Niles's trial testimony regarding the diagnosis had the potential to absolve Rood of liability — it went to the heart of the negligence issue.

¶ 5. Both parties agreed in advance of trial to proceed with videotaped testimony by their respective doctor-witnesses. The court scheduled the trial for April 4 and 11. Although a great deal was made of the inability to schedule the videotaping of Dr. Niles due to conflicts in the attorneys' scheduling, Rood had significant advance knowledge that Dr. Niles's opinions were critical. Nevertheless, Rood did not take sufficient steps to record the doctor's testimony. At a status conference the day before the second trial date, with the testimony still unrecorded, Rood's counsel moved for a continuance. The court denied his motion. Thereafter, Rood's attorney arranged for issuance of a subpoena ordering Dr. Niles to appear the following day.

¶ 6. The next day, Dr. Niles's attorney, appearing by telephone, moved to quash the subpoena citing unreasonable time

_____
dent Bush suffered an episode while eating a pretzel and watching a football game.

for compliance and undue burden — the doctor had a full load of approximately twenty-five patients that day. Dr. Niles's attorney offered to arrange for him to testify by telephone. Over the Simpsons' objections, the court allowed Dr. Niles's telephone testimony. Rood based his defense on Dr. Niles's opinion that the loss of consciousness resulted from cough syncope, and that the episode was both unforeseeable and unavoidable. The jury returned its verdict for Rood later that day.

¶ 7. The Simpsons argue on appeal, as they did below in their objection to Dr. Niles's testimony, that admission of telephonic testimony was reversible error. We agree. When the court quashed Dr. Niles's subpoena and admitted Dr. Niles's testimony in a form other than "orally in open court," as required by V.R.C.P. 43(a), it committed reversible error.

¶ 8. The Vermont Rules of Civil Procedure require that "[i]n all trials the testimony of witnesses shall be taken *orally in open court*, unless otherwise provided by these rules, the Vermont Rules of Evidence, or other rules adopted by the Supreme Court." V.R.C.P. 43(a) (emphasis added). Nowhere in the Rules of Evidence is the general requirement for testimony "orally in open court" abrogated to allow for testimony of an out of court witness — out of sight of the jury — either by telephone or by other means, in a civil trial of this sort under these circumstances. "For testimony to be presented 'orally in open court,' the witness must be present in the courtroom." *Murphy v. Tivoli Enters.*, 953 F.2d 354, 359 (8th Cir. 1992). " '[O]rally in open court' means that a witness testifying in a case must be present in court so that the trier of fact may observe the demeanor of the witness." *In re Gust*, 345 N.W.2d 42, 44 (N.D. 1984). Accordingly, the trial court erred in permitting Dr. Niles to testify by telephone.

¶ 9. Nevertheless, Rood argues that the trial court's decision should be disturbed only for an "abuse of discretion." See *Greene v. Bell*, 171 Vt. 280, 288, 762 A.2d 865, 872 (2000) (Court will not disturb trial court's ruling on admissibility of evidence absent an abuse of discretion). We disagree. In terms of the presentation of oral testimony in civil cases, Rule 43(a) leaves nothing to the court's discretion in the absence of agreement by the parties to allow testimony in a different form. The rule provides that "[i]n all trials the testimony of witnesses *shall* be taken orally in open court." V.R.C.P. 43(a) (emphasis added). Use of "shall" in Rule 43(a) makes the "orally in open court" requirement mandatory. See *Town of Victory v. State*, 174 Vt. 539, 544, 814 A.2d 369, 376 (2002) (mem.) ("Use of the word 'shall' in a statute generally means that the action is mandatory, as opposed to directory."). Of course, nothing prevents the parties from stipulating, with the court's permission, to present testimony by other means, such as videotape. See, e.g., *Gust*, 345 N.W.2d at 44 ("[B]y agreement of the parties, with approval of the court, the testimony may be presented [other than 'orally in open court'], including the use of audiovisual means.").

¶ 10. Rood further argues that Vermont Rule of Evidence 611(a) supports the trial court's ruling because it allows the "court [to] exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence." V.R.E. 611(a). Rood points to the Reporter's Notes to Rule 43(a), which state that the "rules do not intend to impinge upon the rules of evidence." Reporter's Notes, V.R.C.P. 43(a). Following this argument to its logical conclusion would allow courts to sidestep Rule 43(a)'s call for testimony "orally in open court" — resulting in the complete disconnection of witnesses from the jury charged not only with hearing trial testimony, but with *observing* it as well. We

doubt that Rule 611(a)'s drafters intended this result.

¶ 11. Finally, Rood argues that there is inconsistency among the various Vermont rules regarding admission of telephone testimony. For instance, the Vermont Rules for Family Proceedings provide carefully limited exceptions where the court may require a witness to testify by telephone or may allow a party or witness to testify by telephone upon motion. V.R.F.P. 4(g)(1). The law also provides limited opportunities for certain witnesses to testify "out of court," by closed-circuit television or recorded testimony. For example, abuse victims who are under the age of twelve, or mentally ill or mentally "retarded" adults may, in limited circumstances, testify over closed-circuit television. V.R.E. 807. Such testimony, however, is permissible only after a finding that requiring the child to testify in court "will present a substantial risk of trauma ... which would substantially impair the ability of the [witness] to testify." *Id.* § 807(c). Different public policy concerns support the rules cited by Rood, but the important fact is that none of these rules is applicable to the present case. This is a civil negligence matter. The Rules for Family Proceedings are not applicable here. Likewise, this is not a case where Rule 807 applies. There was no basis to stray from the clear mandate of Rule 43(a).

¶ 12. "[W]e have placed our confidence in the adversary system, entrusting to it the primary responsibility for developing relevant facts on which a determination ... can be made." *United States v. Nobles*, 422 U.S. 225, 230 (1975). "Historical experience has taught us that testimonial evidence has the highest reliability because the credibility of the witness can be evaluated, and the factual issues narrowed by cross-examination." *Sanders v. Monsanto Co.*, 574 F.2d 198, 200 (5th Cir. 1978). Thus, within the limitations imposed by the rules, the parties share their respective evidentiary responsibili-

ties. In this case, defendant had several years to arrange for Dr. Niles's proper testimony either in court or by videotape. Under the circumstances, the trial court should not have quashed the subpoena. See *Nobles*, 422 U.S. at 230 ("While the adversary system depends primarily on the parties for the presentation and exploration of relevant facts, the judiciary is not limited to the role of a referee or supervisor. Its compulsory processes stand available to require the presentation of evidence in court . . . .").

¶ 13. Moreover, the error affected a substantial right of a party. V.R.C.P. 61 ("No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order . . . is ground for granting a new trial or for setting aside a verdict . . . unless refusal to take such action appears to the court inconsistent with substantial justice. The court . . . must disregard any error . . . which does not affect the substantial rights of the parties."); V.R.E. 103(a) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . . ."); *Jakab v. Jakab*, 163 Vt. 575, 580, 664 A.2d 261, 263 (1995) ("[W]e will not reverse if the error is harmless."). Allowing Dr. Niles to testify by telephone stripped the Simpsons of their opportunity to conduct cross-examination in the jury's presence. Dr. Niles's testimony was the linchpin of Rood's defense, and thus conversely, it was equally critical to the Simpsons. Precisely because the testimony of Dr. Niles was so important to the outcome of the trial, we find that allowing the examination to occur via telephone, rather than "orally in open court" where the Simpsons could conduct cross-examination in view of the jury, warrants reversal.

¶ 14. Rood argues that because all the medical charts were disclosed, and there was no unfair surprise, Dr. Niles's telephonic testimony did not prejudice a substantial right. Rood further argues

that the right to a fair trial was preserved because counsel for the Simpsons was able to effectively cross-examine the witness — that "in reading the transcript, one cannot tell that Dr. Niles was not physically present in the courtroom." Along similar lines, the trial court justified its ruling, in part, on its determination that because the doctor was an opinion witness, rather than a fact witness, there were no "real credibility" issues at stake.

¶ 15. Whether presented with a fact witness or opinion witness, the jury's role is to observe the testimony and weigh the evidence presented. The simple fact that an expert is qualified to give an opinion does not preclude the jury from weighing the expert's testimony. "[I]t is the province of the jury to determine what weight to accord expert witness testimony." *State v. Muscari*, 174 Vt. 101, 111, 807 A.2d 407, 415 (2002) (citing *Keus v. Brooks Drug, Inc.*, 163 Vt. 1, 5, 652 A.2d 475, 478 (1994)).

*Reversed and remanded.*

Motion for reargument denied May 29, 2003.