[No. 28800-5-III.    Division Three.    May 12, 2011.]

THE STATE OF WASHINGTON, *Respondent*, v. CHRISTOPHER LEE McCABE, *Appellant*.

Kenneth H. Kato, for appellant.

Steven J. Tucker, Prosecuting Attorney, and Mark E. Lindsey and Andrew J. Metts III, Deputies, for respondent.

¶1 SIDDOWAY, J. — Christopher Lee McCabe was convicted of delivery of a controlled substance and possession with

intent to deliver a controlled substance. He contends on appeal that the trial court abused its discretion and deprived him of his constitutional right to compulsory process when it denied his motion to present telephonic testimony of a witness unwilling to testify in court. He also contends that evidence at trial was insufficient to support the convictions. We find no error or abuse of discretion and that the evidence was sufficient. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2 In March 2009, the Spokane Police Department was engaged in a controlled buy operation, a target of which was Richard Bordwell. The department was using a confidential informant to purchase heroin from Mr. Bordwell. In response to one call from the informant seeking a purchase, Mr. Bordwell stated that he had no heroin at that time but would be acquiring some. Detectives saw an opportunity to identify Mr. Bordwell's source of supply and directed the informant to make repeat calls, in an effort to learn more about Mr. Bordwell's purchase plans. In one of the calls, the informant was told that Mr. Bordwell would soon be en route to purchase additional heroin. County sheriff's officers joined the detective overseeing the investigation and followed Mr. Bordwell from his home to the parking lot of a home improvement store where, for the greater part of an hour, Mr. Bordwell sat in his car. Seven or eight officers in unmarked vehicles were in the area to monitor his movements. Mr. Bordwell went inside twice, briefly, where he was surveilled, but was not seen contacting anyone while in the store.

¶3 The second time Mr. Bordwell emerged from the store, a car from the east end of the parking lot, driven by Christopher McCabe, pulled up and parked next to Mr. Bordwell's car. Upon seeing Mr. McCabe's car, Mr. Bordwell jogged toward his own. As Mr. Bordwell entered his car and sat in the driver's seat, Mr. McCabe stepped from his car and entered Mr. Bordwell's, sitting in the front passenger seat.

¶4 The two spoke for about three minutes, during which officers later testified the two men appeared to pass items back and forth. Mr. McCabe then stepped from Mr. Bordwell's car, entered his own, and drove from the parking lot. Mr. Bordwell also drove off. Police officers followed both, pulled them over, and arrested them. When searched, Mr. Bordwell was carrying 12.5 grams of heroin, worth approximately $300. He was carrying only $20 in cash. A search of Mr. McCabe yielded $305 cash from his left front pocket. He had an additional $1,460 cash in his wallet along with three blank $500 money orders, was in possession of 50.2 grams of heroin, and had two cell phones that rang constantly during the arrest. Mr. McCabe was charged with one count of delivery of a controlled substance and one count of possession of a controlled substance with intent to deliver.

¶5 Mr. McCabe's defense at trial was that he was a heroin addict, and that both he and Mr. Bordwell were at the home improvement store to purchase heroin from the same dealer, whom Mr. McCabe refused to identify. He testified that their purchases were made from the dealer in a restroom within the store. Mr. McCabe claimed that all of the heroin he had purchased was for his personal use and that the reason he approached Mr. Bordwell, whom he knew as a fellow addict, was because he was out of syringes and hoped Mr. Bordwell might have some. He testified that the cash in his possession and that he had used to buy the 50.2 grams of heroin was largely from a tax refund received several weeks earlier. He claimed that the money orders in his wallet had been purchased for his housebound grandmother, Nancy McAllister, who occasionally asked him to purchase money orders on her behalf.

¶6 Prior to trial, Mr. McCabe moved the court to permit Ms. McAllister to testify telephonically. Defense counsel represented that she would substantiate Mr. McCabe's testimony that she received cash rents from income properties and, from time to time, asked Mr. McCabe to purchase money orders for her use in paying her expenses and obligations. Report of Proceedings (Oct. 22, 2009) (RP) at 4.

Defense counsel represented that Ms. McAllister was in-firm and reluctant to testify for fear "it will kill her to have to come to court and go through all the excitement and stress of appearing." *Id.* He told the court:

> I came to learn a few days ago that she may be willing to testify telephonically after all, so I was able to call her Tuesday and, as I stated in my certificate, she's only wanting to answer questions about what she knows about these money orders and she doesn't want to have to deal with any additional questions that the prosecutor may ask her on cross[-]examination.

> I believe that is probably a bridge we would cross when we get to it. I'm putting this on the record as a motion for a material witness warrant for telephonic testimony only. I have no intention of subpoenaing her to appear in court. I believe this can be accomplished telephonically.

*Id.* at 5-6. Defense counsel's certificate filed with the court provided no further information on the danger to Ms. McAllister's health other than to say, "As of Oct[.] 20, 2009 she stated that her doctor is about to put her on oxygen" and "she adamantly believes that if she appeared in court to testify that she would become so upset that the experience would be life-threatening." Clerk's Papers at 42. The certifi-cate noted Ms. McAllister's proviso that she would testify by telephone "only if the prosecutor limits his questions to what she knows about the money orders." *Id.*

¶7 The prosecutor objected to limitations on cross-exami-nation and also to telephonic testimony, since it would impede questioning Ms. McAllister about physical evidence and the jury would not be able to assess her demeanor and credibility. RP at 7-8. The court denied the request for telephonic testimony, stating, "The State has a right to have her in court. The jury has a right to observe her demeanor and her manner of testifying and all the other issues that they are to consider when they're adjudicating on credibil-ity. She needs to be here." *Id.* at 9. Defense counsel declined the alternative of a material witness warrant requiring Ms. McAllister's attendance at trial, stating, "That would be too reckless, I believe." *Id.*

¶8 The jury found Mr. McCabe guilty of both counts. He timely appealed.

## ANALYSIS

¶9 Mr. McCabe contends that the trial court's denial of his motion for a material witness warrant for telephonic testimony (1) violated his constitutional right to compulsory process and (2) was an abuse of the court's discretion under ER 611(a). He also argues that the evidence was insufficient to sustain his convictions.

¶10 We review a claim of denial of Sixth Amendment rights de novo. *State v. Iniguez*, 167 Wn.2d 273, 280-81, 217 P.3d 768 (2009). We review a trial court's evidentiary rulings for abuse of discretion. *State v. McDonald*, 138 Wn.2d 680, 693, 981 P.2d 443 (1999). When the sufficiency of the evidence to support a conviction is challenged, the question is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980).

### I

¶11 We first address Mr. McCabe's argument that the trial court's denial of his motion for a material witness warrant requiring only telephonic testimony violated his constitutional right to compulsory process. The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him [and] to have compulsory process for obtaining witnesses in his favor." Article I, section 22 of the Washington Constitution provides that "[i]n criminal prosecutions the accused shall have the right . . . to meet the witnesses against him face to face [and] to have compulsory process to compel the attendance of witnesses in his own behalf." Initially, we note that the process the court was willing to

issue—compelling attendance at trial—is the type of process contemplated at the time the federal and state constitutions were adopted. Mr. McCabe has cited no authority for the proposition that the federal or state constitution guarantees him a right to present witnesses in a manner that did not exist in the 18th and 19th centuries and, while permitted in some jurisdictions today under compelling circumstances, is nonetheless recognized as inferior, depriving the opposing party and the jury of important demeanor evidence.[1]

¶12 The compulsory process right is also not absolute. In order for the right to be violated, the "sovereign's conduct" must impermissibly interfere with the right to mount a defense. *United States v. Theresius Filippi*, 918 F.2d 244, 247 (1st Cir. 1990) (quoting *United States v. Hoffman*, 832 F.2d 1299, 1303 n.3 (1st Cir. 1987)). The contested act or omission must be attributable to the sovereign, and it must cause the loss or erosion of material testimony that is favorable to the accused. *Id.* (citing *Hoffman*, 832 F.2d at 1303). It is not violated where, as here, the obstacle to a defendant's getting what he perceives as the full benefit of his Sixth Amendment right is not government interference, but an uncooperative witness. *Cf. State v. Mankin*, 158 Wn. App. 111, 241 P.3d 421 (2010) (right to interview police officer does not include right to interview in a desired manner if officer objects), *review denied*, 171 Wn.2d 1003 (2011); *State v. Clark*, 53 Wn. App. 120, 124-25, 765 P.2d 916 (1988) (State did not interfere with or create difficulties encountered in defense counsel's attempt to interview child victim; a right to interview a

---

[1] Fed. R. Civ. P. 43(a) was amended in 1996 to permit contemporaneous transmission of testimony from a different location on a showing of good cause in compelling circumstances. But notes of the Advisory Committee on the 1996 amendment state, in part:

The importance of presenting live testimony in court cannot be forgotten. The very ceremony of trial and the presence of the factfinder may exert a powerful force for truthtelling. The opportunity to judge the demeanor of a witness face-to-face is accorded great value in our tradition.

witness does not mean there is a right to have a successful interview), *review denied*, 112 Wn.2d 1018 (1989).

¶13 A defendant's right to compulsory process is also subject to established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence. *State v. Finch*, 137 Wn.2d 792, 825, 975 P.2d 967 (citing *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973)), *cert. denied*, 528 U.S. 922 (1999). In *Finch*, the State called as a witness a friend and co-worker of the defendant, who testified that Finch had admitted to deliberately shooting a police officer. Finch sought to rebut the evidence with testimony of a second friend, who would testify that Finch told her he had not intended to kill the officer. The court excluded the second friend's testimony as self-serving hearsay. On appeal, Finch argued that the refusal to admit the testimony of his second friend denied him his right to compulsory process. But the court observed:

> The problem with allowing such testimony is that it places the defendant's version of the facts before the jury without subjecting the defendant to cross-examination. This deprives the State of the benefit of testing the credibility of the statements and also denies the jury an objective basis for weighing the probative value of the evidence.

*Id.* at 825 (citation omitted). Mr. McCabe's right to compel the attendance of Ms. McAllister was similarly subject to the right of the State to subject her to cross-examination and to a meaningful assessment of her credibility by the jury. The trial court's denial of Mr. McCabe's request that Ms. McAllister be allowed to testify telephonically did not violate his constitutional right to compulsory process.

## II

¶14 Mr. McCabe also contends that the trial court abused its discretion when it based its decision that Ms. McAllister must testify live, if at all, on the "right" of the State to have Ms. McAllister in court and of the jury to

observe her demeanor and her manner of testifying. He argues that the court's decision was a discretionary one under ER 611, which authorizes the court to exercise reasonable control over the mode and order of interrogating witnesses, and that the court's explanation of its decision in terms of "rights" reveals its application of the wrong legal standard. A trial court abuses its discretion if its decision is manifestly unreasonable or is based on untenable grounds or for untenable reasons. *In re Det. of Duncan*, 167 Wn.2d 398, 402, 219 P.3d 666 (2009). A decision is based on untenable grounds if the trial court applies the wrong legal standard. *Id.* at 403.[2]

¶15 We disagree with Mr. McCabe's interpretation of the trial judge's statements; her handling of the motion reveals that she believed she enjoyed discretion and exercised it. Several facts support our conclusion. First, the trial court conducted a hearing and entertained both parties' arguments. The State did not argue that the court lacked discre-

---

[2] We decide the issue on this basis because the State does not contest a discretionary standard, but note that courts have reached conflicting conclusions on whether evidence rules patterned on Fed. R. Evid. 611 authorize a court to permit telephonic testimony. *Compare Byrd v. Nix*, 548 So. 2d 1317, 1319 (Miss. 1989) (evidence rule addressing control over "mode" of interrogating witnesses deals with issues like narrative or question-and-answer form, not telephonic presentation; relying on comment to rule), and *Simpson v. Rood*, 2003 VT 39, 175 Vt. 546, 830 A.2d 4, 7 (to treat the decision as discretionary under Vt. R. Evid. 611 would allow courts to sidestep Vt. R. Civ. P. 43 requirement for live testimony), *with In re MH 2004-001987*, 211 Ariz. 255, 120 P.3d 210 (Ct. App. 2005), *and In re Interest of D.S.*, 333 S.W.3d 379, 388 (Tex. Civ. App. 2011) (relying on Tex. R. Evid. 611 as authority to permit telephonic testimony), *and with Malenko v. Handrahan*, 2009 ME 96, 979 A.2d 1269, 1277 (citing Me. R. Evid. 611 as authority, but applying standards under Me. R. Civ. P. 43 as controlling). In *Kinsman v. Englander*, 140 Wn. App. 835, 844, 167 P.3d 622 (2007), a civil case, the court did not analyze the issue as falling within the trial court's discretion under ER 611; rather, it held that absent authorization of telephonic testimony by statute or court rule, telephonic testimony is permitted in civil proceedings only if both parties consent. The Supreme Court has since amended CR 43(a)(1), effective September 1, 2010, to permit testimony by contemporaneous transmission from a different location "[f]or good cause in compelling circumstances and with appropriate safeguards." Absent clear authorization like that recently added to CR 43, courts have reached conflicting conclusions about the extent of a court's discretion to permit telephonic testimony. *See* Michael J. Weber, Annotation, *Permissibility of Testimony by Telephone in State Trial*, 85 A.L.R.4TH 476 (1991); *In re Estate of Broderick*, 286 Kan. 1071, 1079, 191 P.3d 284 (2008) (discussing split of authority), *cert. denied*, 555 U.S. 1178 (2009).

tion; instead, it argued that it was entitled to an equal opportunity to question Ms. McAllister, that telephonic testimony would impede its ability to cross-examine her with physical evidence, that it would impede the jury's ability to assess her credibility, and that there was nothing to suggest that testifying telephonically would not be equally stressful for her. In summation, the State argued that if the defense wanted to call Ms. McAllister as a witness, it "should" make her available for live testimony in court. RP at 7-8. The court did not question either counsel about whether she lacked discretion in the matter and, in briefly explaining her ruling, she gave no indication that she felt her hands were tied. While she did speak of the State's and the jury's "rights," we regard that as no more than a recognition that applicable statutes and court rules provide for attendance at trial and live testimony. *E.g.*, RCW 2.28.010, .060 (empowering courts and judicial officers to compel the attendance of persons to testify in an action, suit, or proceeding "in the cases and manner provided by law"); RCW 10.52.040 (witnesses may be compelled "to attend and testify in open court, if they have been subpoenaed"); RCW 10.55.020 (uniform act authorizing courts outside the state to issue summons "directing [a material] witness to attend and testify in the court where the prosecution is pending"). The State and the jury would therefore ordinarily have the rights she described, absent her exercising discretion to allow a different sort of testimony.

¶16 Cases cited by Mr. McCabe support the trial court's decision on the motion, inasmuch as they recognize live testimony as superior evidence. In *In re Detention of Stout*, 159 Wn.2d 357, 150 P.3d 86 (2007), the court held that the defendant's due process right to confrontation was not violated by use of a victim's videotaped telephonic depositions at his civil commitment proceeding, but its reasoning was, in part, that the fact finder was able to judge the witness's demeanor. Because the two depositions had been videotaped (albeit with video malfunctions in the first), "the

fact finder had an opportunity to observe [the witness's] demeanor during questioning." *Id.* at 371. In *In re Disciplinary Proceeding Against Sanai,* the court declined to defer to the credibility determination of a hearing officer where the credibility determination was based on written submissions and a witness testifying by telephone, precisely because the hearing officer "is not necessarily in a 'better position to judge their veracity.'" 167 Wn.2d 740, 751, 225 P.3d 203 (2009) (quoting *In re Discipline of Little,* 40 Wn.2d 421, 427, 244 P.2d 255 (1952)).

¶17 We find no abuse of discretion by the trial court in denying Mr. McCabe's motion to permit telephonic testimony.

¶18 We affirm the judgment and sentence.

¶19 The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions. RCW 2.06.040.

KORSMO, A.C.J., and BROWN, J., concur.

Review denied at 172 Wn.2d 1016 (2011).