NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2022 VT 23

No. 2021-132

| Aron C. Vance | Supreme Court |
|---|---|
| v. | On Appeal from Superior Court, Orange Unit, Family Division |
| Miranda Locke | February Term, 2022 |

Thomas A. Zonay, J.

Brittany A. LaBerge and Charles S. Martin, Supervising Attorney, of Martin Delaney & Ricci Law Group Barre, for Plaintiff-Appellee.

Stacey Adamski of Adamski Law, PLLC, Castleton, for Defendant-Appellant.

PRESENT: Reiber, C.J., Eaton, Carroll and Cohen, JJ., and Johnson, J. (Ret.), Specially Assigned

¶ 1. **REIBER, C.J.** Mother appeals the family division's order modifying legal parental rights and responsibilities and parent-child contact as to son. We affirm.

¶ 2. The court first issued a parental rights and responsibilities order in 2015, based on the parties' agreement. Under this order, mother had primary legal responsibility and the parties shared physical custody. The parties had a week-on/week-off custody schedule alternating on Thursdays. Mother picked up son from school and had him until 5:00 p.m. on all weekdays.

¶ 3. In October 2017 father filed emergency motions to modify legal and physical parental rights and responsibilities and parent-child contact, alleging that mother was suicidal and unable to care for son. On the same day, the court granted a temporary modification solely on the

basis of father's filings, awarding sole legal and physical parental rights and responsibilities to father pending a hearing to determine whether a longer-term modification would be appropriate. Mother filed a response to father's motions, seeking to end the emergency order and modify the original 2015 order to restrict father's parent-child contact. Following a hearing in January 2018 the court ordered the parties to return to the terms of the original 2015 parentage order, pending a final determination on the motions to modify.

¶ 4. Following a status conference in April 2018, the trial court issued an entry order addressing a number of issues. Although the record contains no indication that either party had proposed appointment of a guardian ad litem, the court concluded that appointment of a guardian ad litem for the child was appropriate. It reasoned as follows:

> Although the child is not expected to testify, a [guardian ad litem] may provide the parties and their counsel information to help obtain an outcome in the best interest of the child. Although the [guardian ad litem] would not testify (except in rare occasions allowed under the rule), he or she may at pretrial conferences orally suggest matters that will help the court formulate issues for the final hearing (V.R.F.P. 7(f)(1)(B)), or in appropriate circumstances move for appointment of counsel for the child.

The court, of its own accord, appointed an attorney for son in May 2018 and a guardian ad litem in June 2018. No written order or other explanation accompanied these appointments. Other than the April 2018 entry order, the record contains no information regarding the purpose or parameters of these roles. No one objected to either appointment.

¶ 5. Both son's attorney and guardian ad litem participated in subsequent pre-trial proceedings without objection. The court's entry orders from 2018 and 2019 reflect input from son's attorney and guardian ad litem on various pre-trial issues, including particularly the family forensic evaluation that the court ordered in June 2018. Both son's attorney and guardian ad litem opined on the need to order such an evaluation. The court charged son's attorney with obtaining records from the Department for Children and Families (DCF) related to prior child-protection

2

matters involving son and mother's other two children and providing them to the forensic evaluator. In January 2020, when the evaluator could not complete her report because of a dispute with DCF regarding the appropriate level of redaction for case files, son's attorney moved the court to order DCF to produce unredacted records. The evaluator finally issued her report in February 2020.

¶ 6. The court held merits hearings in March 2020 and March 2021 on the competing motions to modify. During the hearing, neither guardian ad litem nor son testified, but both guardian ad litem and son's attorney were present. Mother's attorney objected to son's attorney making objections, as well as examining and cross-examining witnesses. Mother's attorney argued that son was not made a party to the case and that Family Rule 7 does not specifically allow a child's attorney to participate outside of juvenile cases. She contended further that Civil Rule 43 implies that only parties (or their attorneys) may question witnesses. Mother's attorney also suggested that son's attorney in this case was biased against mother because the same attorney represented son and her two other children in prior child in need of care or supervision (CHINS) proceedings. The court overruled mother's attorney's objection, reasoning that neither Family Rule 7 nor Civil Rule 43 expressly prohibited a child's attorney from participating actively in custody hearings. It determined that Civil Rules 1 and 81 and Evidence Rule 611 empowered the court to allow son's attorney to participate because no other rules prohibited such participation and doing so was appropriate and helpful to the court.

¶ 7. Son's attorney participated primarily by raising various objections and cross-examining witnesses called by the parties. Son's attorney did not call any witnesses, present oral or written argument, file motions during or after trial, or participate in any other meaningful way except to respond orally to queries from the presiding judge. During cross-examinations of mother and father, son's attorney adduced non-cumulative testimony bearing on the crux of father's

3

allegations, namely, father's personal observations of mother's mental health issues, association with unsafe individuals, and substance use, and how these affected son.

¶ 8.     The family division granted father's motions to modify in part.  The court found that the events surrounding mother's suicide attempt constituted a real, substantial, and unanticipated change of circumstances.  It also made findings on the statutory best-interests factors and concluded that they weighed in favor of modifying parent-child contact and parental rights and responsibilities.  The court's order divided legal responsibility for son between the parties, awarding father responsibility for educational matters and mother responsibility for all other matters.  Physical parental rights and responsibilities remained shared, but the court modified the parent-child contact schedule so that the parties alternated weeks on Fridays instead of Thursdays and mother would only care for son after school every other week.

¶ 9.     On appeal, mother argues this order should be reversed because the court: (1) abused its discretion by dividing legal rights and responsibilities between the parties; (2) impermissibly relied on DCF history; (3) erred in allowing son's attorney to participate at the merits hearing; and (4) did not make sufficient findings relative to son's best interests.

¶ 10.     When presented with a motion to modify legal or physical rights and responsibilities or parent-child contact, the family court must follow a two-step analysis:

> First, the moving party must show that there is a "real, substantial and unanticipated change of circumstances." 15 V.S.A. § 668(a).  If the party meets that burden, the court may modify legal and/or physical rights and responsibilities or parent-child contact "if it is in the best interests of the child." 15 V.S.A. § 668(a).  In determining the best interests of a child, the court considers the nine factors listed in 15 V.S.A. § 665(b).

Quinones v. Bouffard, 2017 VT 103, ¶ 11, 206 Vt. 66, 179 A.3d 173 (additional citations omitted).

¶ 11.     The family division has broad discretion to determine whether changed circumstances exist and what parenting arrangement is in the child's best interests.  Id. ¶ 10.  So long as it applied the correct legal standards, we will uphold the court's factual findings unless

4

they are clearly erroneous and will affirm its legal conclusions if supported by the findings. Sochin v. Sochin, 2005 VT 36, ¶ 4, 178 Vt. 535, 872 A.2d 373 (mem.).

¶ 12. Mother contends the trial court erred in awarding father responsibility for son's education. She asserts that father was untruthful during his testimony, that the court failed to account for father's history of harassing her and interfering in her parent-child contact, and that the evidence showed she was not deficient in her decision-making responsibility but father was. Because this Court does not reweigh the evidence or make findings of credibility de novo, Mullin v. Phelps, 162 Vt. 250, 261, 647 A.2d 714, 720 (1994), we reject mother's arguments regarding father's truthfulness and the weight of certain evidence.

¶ 13. Mother also argues that the court ran afoul of 15 V.S.A. § 665(a) by ordering parents into a shared decision-making arrangement without their agreement. Because son's mental-health conditions are such that his educational and medical needs are intertwined, mother contends that awarding educational responsibility to father and medical responsibility to mother will inevitably require joint decision-making. The statute provides that "[t]he court may order parental rights and responsibilities to be divided or shared between the parents on such terms and conditions as serve the best interests of the child." 15 V.S.A. § 665(a). It states further that "[w]hen the parents cannot agree to divide or share parental rights and responsibilities, the court shall award parental rights and responsibilities primarily or solely to one parent." Id. In interpreting this statute, we have held that it is not in a child's best interests to order parents to share one or more parental rights and responsibilities absent their mutual assent. Shea v. Metcalf, 167 Vt. 494, 499, 712 A.2d 887, 890 (1998). However, we have also held it is consistent with the Legislature's intent and within the trial court's discretion to split up and allocate legal rights and responsibilities between the parents if doing so would be in the child's best interests. See id. at 500, 712 A.2d at 891 (affirming family court's decision that "awarded each of the rights and responsibilities 'solely' to one parent" and noting that such an order "avoids the problems of joint

5

decision-making while satisfying the Legislature's intent that children retain 'the opportunity for maximum continuing physical and emotional contact with both parents' " (quoting 15 V.S.A. § 650)). As in Shea, where the mother had argued that the practical logistics of divided legal rights and responsibilities would be "confusing and unworkable," mother's concerns here are logistical and hypothetical. Id. at 502, 712 A.2d at 892. "We will not judge the efficacy of a family court's order on circumstances that could potentially arise in the future." Id.

¶ 14. To the extent mother challenges the sufficiency of the evidence on this issue, the record supports the court's findings both that parents could adequately work together to allow for divided legal responsibilities and that father was better suited to have responsibility for education decisions. The family forensic evaluator concluded that although both parents were fit to parent son, a division of parental responsibility would best support son's educational and medical needs. The evaluator determined that father was engaged with son's educators at school and had demonstrated an ability to follow through on educational matters. Although the court noted mother's improvement with her mental health through engagement with appropriate services, the court found based on the evaluator's report and other relevant evidence that mother's history of safety concerns—including her 2017 suicide attempt, mental health issues, substance use, and relationships with people who pose a potential safety risk to son—may undermine her ability to provide the same consistent and stable environment for son as father does. Finally, though both parties acknowledged difficulty communicating with each other, father testified that he believed the parties' communication had improved since beginning counseling together in 2019. This evidence supports the trial court's decision to award father educational decision-making and mother other legal responsibilities.

¶ 15. Mother next argues that the court should not have relied on reports from DCF to evaluate the child's best interests. Mother contends that: not all DCF files were provided to the family forensic evaluator in a timely manner, no one from DCF testified at the hearing, and father

was allegedly having a sexual relationship with a DCF investigator. She relies on cases establishing that DCF has different aims and applicable standards in its investigations than the family division has in parentage proceedings, and that DCF's substantiations may not necessarily be congruous with the family division's analysis on the same issues because of the different contexts in which they operate. See Chase v. Bowen, 2008 VT 12, ¶ 14, 183 Vt. 187, 945 A.2d 901 ("DCF's substantiation, and whatever investigative effort it represented, constituted no actual proof of any issue to be decided by the family court."); Siegel v. Misch, 2007 VT 116, ¶ 6, 182 Vt. 623, 939 A.2d 1023 (mem.) ("While it may seem incongruous to litigants, DCF and family courts may come to different conclusions as to whether abuse has taken place, even when the evidence confronting both bodies is overlapping, as it is in this case.").

¶ 16. We need not address the merits of mother's argument because we conclude that any error in crediting the reports was harmless, as the court did not rely on the information in the reports and the court's findings were supported by other evidence in the record. See In re A.F., 160 Vt. 175, 178-79, 624 A.2d 867, 869 (1993) (stating that erroneous finding does not require reversal where other evidence supports court's decision). The trial court's decision here has scant reference to the DCF reports and does not appear to rely in any significant way on their substance. Besides noting that the family forensic evaluator had reviewed available DCF files, the court's decision mentions DCF only once—in the context of parents' ability to communicate effectively with each other:

> From 2014 through the filing of the pending motion Mother and Father have had difficulty communicating. Father has also had safety concerns and made numerous reports to DCF about Mother and her care of [son]. These include concerns regarding drug and alcohol use, as well as her exposing [son] to people . . . who posed a safety risk to the child. Father believes that since beginning counseling with Mother in late 2019 their communication has improved. Mother does not agree with Father's view that her behaviors being a potential safety risk to [son]. The Court finds from the evidence that Father's concerns derive from his desire to protect his child and that there was a reasonable basis for the reports and

7

concerns, some of which, the Court observes, were substantiated by DCF.

As this excerpt demonstrates, the court was focusing not on the substance of DCF investigations but rather on the fact that father had reported mother's behavior to DCF, the reasonableness of his reports, and how these circumstances affected parents' communication with each other.

¶ 17. To the extent the court relied directly on DCF's substantiations regarding these safety concerns, we need not analyze the propriety of this evidence because there was other evidence in the record to support the court's relevant findings on son's best interests. Chickanosky v. Chickanosky, 2011 VT 110, ¶ 14, 190 Vt. 435, 35 A.3d 132 ("[F]indings will stand if any reasonable and credible evidence supports them."). In particular, father testified to his personal observations of mother's substance use and relationships with unsafe individuals and his concerns about these behaviors as a safety risk for son. This evidence independently supported the court's findings regarding safety issues.

¶ 18. Mother also contends that the court erred in relying on the family forensic evaluator's report because the evaluator did not have all DCF records pertaining to the family. Mother asserts that if the evaluator had reviewed all DCF records, her conclusions may have been different. However, mother does not identify which records were allegedly missing or explain why she did not seek to have those records provided to the evaluator at some point before the report was complete. It is clear from the record that the evaluator did review numerous DCF records. But nothing in the applicable rules or statutes dictates precisely what information a forensic evaluator must or must not review. The evidentiary statute pertaining specifically to parentage proceedings states in relevant part that "[r]eports prepared by a person qualified as an expert under the Vermont Rules of Evidence, evaluating the best interests of the child, shall be admissible for the purposes of determining parental rights and responsibilities provided that the expert is available for cross-examination." 15 V.S.A. § 667(b). Mother does not contest the

8

evaluator's qualifications. To the extent mother thought that the evaluator's assessment was flawed, she had a full opportunity to challenge it at trial. Indeed, her attorney cross-examined the evaluator extensively at the merits hearing. Ultimately, it was up to the trial court to assess the weight and credibility to assign to the report.

¶ 19. Mother next argues the family division erroneously interpreted statutory and procedural provisions when it allowed son's attorney to participate in the hearing over her objections. We review evidentiary rulings for abuse of discretion. Clark v. Bellavance, 2016 VT 124, ¶ 22, 204 Vt. 111, 162 A.3d 679. "The interpretation of a statute is a question of law that we review de novo." State v. Therrien, 2011 VT 120, ¶ 9, 191 Vt. 24, 38 A.3d 1129. Likewise, we review the trial court's interpretation of a procedural rule de novo. Weitz v. Weitz, 2019 VT 35, ¶ 7, 210 Vt. 248, 213 A.3d 1102.

¶ 20. Mother contends that by allowing a nonparty to present evidence and objections, the court "broke away from the natural adversarial process" and therefore erred. She relies on our statement in Simpson v. Rood, 2003 VT 39, 175 Vt. 546, 830 A.2d 4, that "[w]e have placed our confidence in the adversary system, entrusting to it the primary responsibility for developing relevant facts on which a determination . . . can be made." Id. ¶ 12 (quoting United States v. Nobles, 422 U.S. 225, 230 (1975)). Both Simpson and Nobles addressed circumstances where one party's right to effective cross-examination was constrained: in Simpson the plaintiff's key witness was permitted to testify by telephone out of the jury's sight, 2003 VT 39, ¶ 13; in Nobles the criminal defendant was allegedly deprived of critical impeachment information in the hands of the prosecution, 422 U.S. at 230-31. These cases emphasized the importance of the adversarial process, in particular cross-examination, as a means to ensure the "full disclosure of all the facts." Nobles, 422 U.S. at 231; see also id. (noting importance of "full benefit of cross-examination" so that "truth-finding process may be enhanced"). To that end, both decisions acknowledged that the court is not limited to reliance on the parties to adduce evidence. Simpson, 2003 VT 39, ¶ 12

9

("While the adversary system depends primarily on the parties for the presentation and exploration of relevant facts, the judiciary is not limited to the role of a referee or supervisor. Its compulsory processes stand available to require the presentation of evidence in court . . . ." (quoting Nobles, 422 U.S. at 230)). Mother does not contend that her right of cross-examination was curtailed in any way or that the court was deprived of any relevant information. Quite the opposite, she suggests that the court received too much evidence because son's attorney was allowed an equal opportunity as mother's and father's attorneys to question their witnesses. These cases thus do not support mother's argument but instead instruct that the adversarial process is a means, not an end. The end is the ascertainment of truth.

¶ 21.    Although the prototypical court case involves two parties—each adverse to the other and each presenting competing evidence—custody matters present unique circumstances. On one hand, arguably no one has a greater interest in a custody matter than the child himself. Indeed, by legislative design "the paramount issue in the custody proceeding is not the mother's best interest, nor the father's, but the children's." Cloutier v. Blowers, 172 Vt. 450, 455, 783 A.2d 961, 965 (2001) (quotation omitted). On the other hand, only the parents—not the child—are automatically afforded party status by statute. See Ihinger v. Ihinger, 2003 VT 38, ¶ 7, 175 Vt. 520, 824 A.2d 601 (mem.) ("Although minor children are affected by the decisions courts must make concerning parental rights and responsibilities in the course of divorce proceedings, minor children are not normally parties to such proceedings."). The family court is vested with broad discretion to allocate parental rights and responsibilities and parent-child contact, based on the child's best interests. DeLeonardis v. Page, 2010 VT 52, ¶ 20, 188 Vt. 94, 998 A.2d 1072. The trial court must make factual findings as to the child's best interests with reference to nine statutory factors. 15 V.S.A. § 665(b). It must do so based on the evidentiary record before it. Rutanhira v. Rutanhira, 2011 VT 113, ¶ 12, 190 Vt. 449, 35 A.3d 143 ("[W]hen a trial court relies on information taken from outside of the proceeding, especially where it involves the central issue

10

before the court, it commits error."). Thus, with regard to these critical questions affecting the child's life, the child is at the mercy of the trial court, which must decide what parental arrangement is in the child's best interests based on evidence adduced primarily by the parents or their attorneys.

¶ 22. States across the country have wrestled with these issues and have taken a variety of approaches that break from the traditional adversarial arrangement in furtherance of the child's best interests. See generally L. Elrod, Child Custody Prac. & Proc. § 12:4 (June 2021 Update) (discussing various state laws regarding counsel for children in custody matters). Some states have carved out a role for attorneys of nonparty children through statute, with varying degrees of specificity. Compare, e.g., Iowa Code Ann. § 598.12(1)(a) (West 2017) (stating that "[u]nless otherwise enlarged or circumscribed by a court having jurisdiction over the child or by operation of law . . . [the hybrid attorney-guardian ad litem] may cause witnesses to appear, offer evidence, and question witnesses on behalf of the best interests of the child" and "may offer proposed or requested relief and arguments in the same manner allowed the parties by the court," but "shall not testify, serve as a witness, or file a written report in the matter") with Colo. Rev. Stat. Ann. § 14-10-116(2)(a) (West 2021) (explaining that trial court has discretion to appoint attorney for child in custody cases and once appointed, child's attorney "shall actively participate in all aspects of the case involving the child, within the bounds of the law" and shall comply with Colorado rules of professional conduct) and Conn. Gen. Stat. Ann. § 46b-54(e) (West 2021) ("Counsel or a guardian ad litem for the minor child or children shall be heard on all matters pertaining to the interests of any child, including the custody, care, support, education and visitation of the child, so long as the court deems such representation to be in the best interests of the child. To the extent practicable, when hearing from such counsel or guardian ad litem, the court shall permit such counsel or guardian ad litem to participate at the beginning of the matter, at the conclusion of the matter or at such other time the court deems appropriate so as to minimize legal fees incurred by the parties due to the participation of such counsel or guardian ad litem in the matter."). Others have

11

addressed the participation of a child's attorney through procedural rules.  See, e.g., Ariz. Rules of Fam. L. Proc. 10(e) (stating that child's attorney appointed in custody case "must participate in the proceeding to the same extent as an attorney for any party").  Still others have allowed standards to develop through case law, based on broadly worded statutes.  See, e.g., N.Y. Fam. Ct. Act § 241 (McKinney 2010) (stating simply that "minors who are the subject of family court proceedings . . . should be represented by counsel"); Newton v. McFarlane, 103 N.Y.S.3d 445, 450-51 (App. Div. 2019) (interpreting this statute to mean that "the appointed attorney for the child has the right, equal to the right of the attorneys for the litigants, to fully appear and participate in the litigation, including the right to call, examine, and cross-examine witnesses, and the right to advance arguments on behalf of the child," including the right to appeal).  Vermont has both a statute and a procedural rule that address the appointment of an attorney for a nonparty child in parental rights and responsibilities cases.  15 V.S.A. § 594; V.R.F.P. 7.

¶ 23.    Mother does not contest the trial court's appointment of counsel for son in this case. She argues that the power to appoint counsel does not entail the power to confer any rights for counsel to participate except in one limited circumstance.  She contends that a child's attorney can participate at a custody trial only to represent the child if and when the child testifies, which did not happen here.  Section 594 of Title 15 provides that "[t]he court may appoint an attorney to represent the interests of a minor or dependent child with respect to child support and the allocation of parental rights and responsibilities."  15 V.S.A. § 594(a).

> Our primary objective in construing a statute is to effectuate the Legislature's intent.  In accomplishing this, our first step is to examine the statute's language because we presume that the Legislature intended the plain, ordinary meaning of the statutory language.  If a statute is clear on its face, we accept its plain meaning and will not rely on statutory construction, but where the language creates ambiguity or uncertainty, we resort to statutory construction to ascertain the legislative intent.  In construing legislative intent, "we must consider the entire statute, including its subject matter, effects and consequences, as well as the reason for and spirit of the law."

Shires Hous., Inc. v. Brown, 2017 VT 60, ¶ 9, 205 Vt. 186, 172 A.3d 1215 (quotations and citations omitted).

¶ 24.    Although the plain language of 15 V.S.A. § 594(a) does not expressly define the scope of a child's attorney's participation, accepting mother's argument would render this provision meaningless. Baldauf v. Vt. State Treasurer, 2021 VT 29, ¶ 19, __ Vt. __, 255 A.3d 731 ("We consider the whole and every part of the statute and avoid a construction that would render part of the statutory language superfluous."). Section 594 clearly envisions a role for the child's attorney in two distinct circumstances: subsection (a) provides the court with discretion to appoint an attorney "with respect to . . . the allocation of parental rights and responsibilities"; subsection (b) requires the court to appoint an attorney for the child before the child is called as a witness in a custody case. 15 V.S.A. § 594. Thus, for any custody case where a child does not testify, the Legislature saw fit to provide the trial court with discretion to appoint an attorney for the child. The Legislature clearly contemplated some role for the child's attorney in such cases; otherwise this assignment of discretion would make no sense.

¶ 25.    We discussed the intent of 15 V.S.A. § 594 in Ihinger v. Ihinger, which is instructive here. We held in Ihinger that nonparty children do not have standing to appeal the family division's custody order. Ihinger, 2003 VT 38, ¶ 10. In so holding, we explained that the Vermont Legislature "did not intend for the minor children of divorcing parents to be statutory parties in the divorce proceeding," but that the Legislature "has devised alternative means by which children's interests are protected during a divorce," including giving the family division "discretion to appoint a guardian ad litem and an attorney for the children to assure the children's best interests are met." Id. ¶ 8 (citing 15 V.S.A. §§ 594, 669; V.R.F.P. 7). Because the purpose

13

of 15 V.S.A. § 594 is to protect the child's best interests, it follows that the scope of the child's attorney's participation in the custody matter should be guided by the child's best interests.[1]

¶ 26. This understanding is bolstered by the structure and context of Vermont's child-custody statutes. See Ihinger, 2003 VT 38, ¶ 7 ("Divorce is a creature of legislative enactment, and courts may adjudicate matters in a divorce only in accordance with statute. We examine the statutes governing divorce proceedings in pari materia to ascertain and give effect to the Legislature's intent." (citation omitted)). The Legislature designated "[t]he judges of the Superior Court [as] triers of questions of fact as well as of law" in custody cases. 15 V.S.A. § 591. It also tasked the family division with determining what parental arrangement is in the child's best interests—a mixed question of fact and law. Id. § 665(b). To assist the court in this critical endeavor, the Legislature provided it with discretion to appoint a guardian ad litem and an attorney to represent the child, even where the child is not called as a witness. 15 V.S.A. §§ 594, 669. These two roles are distinct. "[T]he court may appoint a guardian ad litem to assist the child in understanding the process and to provide the parties and their attorneys with information that can assist the parties in reaching an outcome that is in the best interest of the child. The guardian ad litem may be an attorney but shall not serve as the child's attorney." V.R.F.P. 7(b); see also In re D.B., 155 Vt. 580, 585, 587 A.2d 966, 969 (1991) ("[T]he roles of attorney and guardian ad litem

---

[1] We also interpreted 15 V.S.A. § 594 in Lumbra v. Lumbra, 136 Vt. 529, 394 A.2d 1139 (1978), observing that the children's "attorney stands in the same relationship to the children and to the court as any other attorney representing his client. He may present evidence, cross-examine witnesses, and argue on the evidence on behalf of his clients." Id. at 533, 394 A.2d at 1142. However, this observation was dictum, without further analysis or discussion of authority. We did not have occasion in Lumbra to analyze the bounds of the trial court's discretion either in appointing an attorney to represent a child in custody matters or in determining the scope of that attorney's participation. To the extent our decision today conflicts with this dictum in Lumbra, we do not follow it. See Roy v. Woodstock Cmty. Tr., Inc., 2013 VT 100A, ¶ 56 n.12, 195 Vt. 427, 94 A.3d 530 ("Because, as noted, our earlier decisions did not address the question presented here, their broad language was essentially nonbinding dicta, and as such need not be specifically overruled.").

for a minor are separate in order to avoid the conflict that could result where legal counsel is cast in the quandary of acting as both attorney and client." (quotation omitted)). That the Legislature provided for these two independent positions strongly suggests an intent for the child's attorney—if appointed—to take on a role distinct from the guardian ad litem. Both roles are meant to assist the court in its goal of ascertaining the child's best interests.

¶ 27. Applicable procedural rules provide further, albeit limited, guidance regarding the permissible scope of a child's attorney's participation in custody matters. Because both the Civil and Family Rules apply in parentage cases, we look to both. V.R.F.P. 4.0(a)(2)(A) (providing that Vermont Rules of Civil Procedure apply to parentage cases). Contrary to mother's assertion, neither Civil Rule 17 nor Family Rule 7 prohibits a nonparty child's attorney from examining witnesses in a custody proceeding. Civil Rule 17 addresses the capacity of various persons to sue and be sued, but it does not speak to the court's discretion regarding examination of witnesses. V.R.C.P. 17. Family Rule 7 requires the court to appoint an attorney for a child "[i]f issues related to the child are contested and the guardian ad litem recommends the appointment of an attorney for the child" and otherwise gives the court discretion to appoint an attorney for the child "[i]n appropriate circumstances." V.R.F.P. 7(c). It does not limit the participation of a child's attorney once appointed. Mother suggests that the 2014 amendments to Family Rule 7—which narrowed the role of the guardian ad litem and removed language requiring the guardian ad litem to be an advocate for the child—somehow also narrowed the child's attorney's role. See Reporter's Notes—2014 Amendment, V.R.F.P. 7. Mother implies that these amendments recognize that a child never needs an advocate in custody cases. No such intent is evident. Rather, because these two roles are complementary and because advocacy is a core function of any attorney, see V.R.Pr.C. Preamble, [2] (describing role of advocate among lawyer's primary functions), the amendment clarifying that a guardian ad litem cannot act as an advocate signifies that any advocacy lies solely within the purview of the child's attorney.

¶ 28. The trial court here recognized that no procedural rule expressly dictated parameters for a nonparty child's attorney's participation in a custody trial, and it instead relied on various catchall rules, including V.R.C.P. 1 and 81, as grounds for permitting son's attorney to raise objections and cross-examine witnesses.[2] It is not clear from the hearing transcript exactly how the court interpreted these catchall rules. Rule 1 provides that the Civil Rules "shall be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action." V.R.C.P. 1. This sentence "establish[es] a canon of liberal construction." Nelson v. Russo, 2008 VT 66, ¶ 8, 184 Vt. 550, 956 A.2d 1117 (mem.); see also Leger v. Dessureault, 733 F. Supp. 786, 789 (D. Vt. 1990) (citing Rule 1 to conclude "our foremost objective whenever we interpret the Vermont Rules of Civil Procedure must be to do justice"). For example, we cited Rule 1 to rely on the "broader purposes" of Rule 56 in holding that a verified complaint may be used in place of an affidavit to oppose summary judgment. Johnson v. Harwood, 2008 VT 4, ¶ 10, 183 Vt. 157, 945 A.2d 875.

¶ 29. Rule 81 works in tandem with Rule 1 to some extent. It provides in relevant part that "[w]hen no procedure is specifically prescribed, the court shall proceed in any lawful manner not inconsistent with the Constitution of the State of Vermont, these rules, or any applicable statutes." V.R.C.P. 81(d). The Reporter's Notes explain that "Rule 81(d) gives the court a limited

_____

[2] The court also relied on Vermont Rule of Evidence 611, which provides in relevant part that trial courts "shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation orderly and effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." V.R.E. 611(a). This rule is typically invoked to change the mode or order of presentations or to limit, rather than expand, the scope of evidence presented. See, e.g., Varnum v. Varnum, 155 Vt. 376, 390, 586 A.2d 1107, 1115 (1990) ("[T]he power granted by Rule 611(a) includes the authority to set reasonable limits on the consumption of time in examining witnesses."); see also In re H.A., 153 Vt. 504, 511-12, 572 A.2d 884, 888-89 (1990) (affirming, based on V.R.E. 611(a), trial court's ruling that limited scope of cross examination and prevented one party's attorney from directly testifying). We need not decide the rule's application to mother's claim that the court impermissibly expanded the presentation of evidence because other legal provisions support the court's ruling on mother's objection.

discretion to improvise procedures in unforeseen situations which the rules do not cover. It is not intended as a general power to enlarge the rules." Reporter's Notes, V.R.C.P. 81(d). Thus, neither Rule 1 nor 81 was an independent source of authority for defining the scope of son's attorney's participation.

¶ 30. Instead Rule 1 provided a lens through which the trial court could liberally interpret other potentially applicable Civil Rules—for example, Civil Rule 43, which mother raised below but not on appeal. For its part, Rule 81 empowered the trial court to improvise a procedure—integrating the limited participation of a nonparty's attorney into the sequence of proceedings at trial—to effectuate the substantive authority established by V.R.F.P. 7(c) and 15 V.S.A. § 594. Viewed in this light, the trial court's reliance on Civil Rules 1 and 81 was well-placed.

¶ 31. Collectively Family Rule 7 and 15 V.S.A. § 594 establish the trial court's discretion to appoint an attorney for a child in any custody case, regardless of party status, under "appropriate circumstances." V.R.F.P. 7(c). Because the overarching purpose of these provisions is to protect the child's best interests, Ihinger, 2003 VT 38, ¶ 8, we hold that the extent of the child's attorney's participation, if appointed, should be clearly articulated at the outset and dictated by the trial court's assessment of the child's best interests. The court must exercise discretion to make this determination, and explain its reasoning, on a case-by-case basis, considering the totality of circumstances.

¶ 32. Unfortunately the trial court did not define the role or purpose of son's attorney when it initially appointed him nearly two years before the first merits hearing. Not only did this lack of explanation leave the parties uncertain as to the potential extent of son's attorney's participation, it also makes our task in reviewing the court's exercise of discretion more difficult. See ABA Section of Fam. L., Standards of Practice for Lawyers Representing Children in Custody Cases, 37 Fam. L.Q. 131, 154 (2003) [hereinafter "ABA Standards"] (explaining that where appointing counsel for child is discretionary, it is important for court to provide clear explanation

17

of scope and purpose of appointed counsel to provide fair notice to all parties and allow court to make informed decisions and exercise effective oversight throughout case). Nevertheless the record supports the conclusion that the court did not abuse its discretion in overruling mother's objection at trial and permitting son's attorney to raise objections and cross-examine witnesses. To guide our review, we refer to but do not adopt the ABA Standards, which describe circumstances or allegations that, if present in a custody case, should weigh in favor of appointing counsel for the child. Id. at 153. Many attend this case: alleged "[h]arm to the child from illegal or excessive drug or alcohol abuse by a child or a party"; "[p]ast or present mental health problems of the child or a party"; "[s]pecial physical, educational, or mental health needs of a child that require investigation or advocacy"; "[a] high level of acrimony"; and alleged "[i]nterference with custody or parenting time." Id.

¶ 33. The court, on its own accord, appointed an attorney and guardian ad litem for the child a few months after a contentious emergency hearing on cross motions to modify parental rights and responsibilities. The hearing illuminated serious allegations against both parties—that father was interfering with the custody arrangement and trying to alienate son from mother, and that mother was a danger to herself and son because she attempted suicide, abused alcohol and drugs, and had relationships with unsafe men. Throughout the objection-laden hearing, parents' attorneys tussled over DCF records pertaining to the family and criminal and DCF records of individuals with whom mother had close relationships. Counsel also extensively debated the admissibility of evidence regarding then-four-year-old son's description of what happened the first night mother was hospitalized. In addition, son had potential mental-health diagnoses and parents disagreed about the need for medication. All of these circumstances militated in favor of appointing an attorney for son to actively represent the son's best interests through at least some level of participation in the case. We note further that at the merits hearing, son's attorney adduced non-cumulative testimony relevant to several of the statutory best interests factors. See id. ("In

18

some cases the court's capacity to decide the case properly will be jeopardized without a more child-focused framing of the issues, or without the opportunity for providing additional information concerning the child's best interests."). In light of the above, we cannot say that the family division abused its discretion in allowing son's attorney the limited opportunity to participate by way of raising objections and cross-examining witnesses called by each parent.

¶ 34. We reiterate the narrowness of our holding in this case. We do not opine on whether further participation by son's attorney, short of party status, may have been appropriate, or what circumstances, beyond those present in this case, might justify appointment of counsel for a child. We conclude merely that based on the record before the trial court—and its authority to compel the services of an attorney to represent the child where appropriate to fulfill its obligation to uphold the child's best interests—the court acted within its discretion in allowing son's attorney to participate to the extent it did.

¶ 35. We turn briefly to mother's contention that the particular attorney appointed to represent son was biased against her. Mother does not explain what relief she sought from the trial court, how the court erred by appointing or allowing this particular attorney to represent son, or what remedy she seeks on appeal. Mother baldly states that the participation of this attorney impacted her "substantial right" to have a hearing based solely on the parties' presentations and without the appearance that son was antagonistic to her position, but she fails to develop this assertion or provide any legal support. We therefore reject the contention as inadequately briefed. See V.R.A.P. 28(a) (appellant's brief shall contain specific claims of error, contentions of appellant, how they were preserved, and citations to authorities, statutes, and parts of record relied on); Johnson v. Johnson, 158 Vt. 160, 164 n.*, 605 A.2d 857, 859 n.* (1992) (Supreme Court will not address contentions so inadequately briefed as to fail to minimally meet standards of V.R.A.P. 28(a)).

19

¶ 36. Mother's final argument is that the court made insufficient findings as to son's best interests. She concedes that the court made findings as to the factors in 15 V.S.A. § 665, but she recasts her previous arguments regarding the weight and credibility of evidence. As we do not reweigh evidence or assess credibility de novo on appeal, <u>Mullin</u>, 162 Vt. at 261, 647 A.2d at 720, we see no basis to overturn the court's order.

<u>Affirmed</u>.

FOR THE COURT:

_____

Chief Justice

20